675 S.E.2d 287 (2009)
In the Interest of C.P., a child.
No. A09A0730.
Court of Appeals of Georgia.
March 11, 2009.
*288 David J. Walker, for appellant.
Jewel C. Scott, District Attorney, R. Christopher Montgomery Jr., Assistant District Attorney, for appellee.
BLACKBURN, Presiding Judge.
Following a bench trial in juvenile court, C.P. was adjudicated delinquent after the court found that he had committed acts which, had he been an adult, would have supported convictions for possession of cocaine,[1] participation in criminal street gang activity,[2] theft by shoplifting,[3] and carrying a concealed weapon.[4] He appeals, arguing that the evidence was insufficient to support a conviction of participation in criminal street gang activity. For the reasons set forth below, we affirm.
The standard of review for adjudications of juvenile delinquency is clear.
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged.
(Punctuation omitted.) In the Interest of A.D.[5] See generally Jackson v. Virginia.[6] "Thus, the standard of review on appeal in a case of adjudication of delinquency of a juvenile is the same as that for any criminal case." (Punctuation omitted.) In the Interest of T.T.[7] "In reviewing such cases, we do not weigh the evidence or determine witness credibility." In the Interest of A.D., supra, 282 Ga.App. at 587(1), 639 S.E.2d 556. See In the Interest of T.N.[8]
So viewed, the record shows that on February 12, 2008, an assistant manager at a local Wal-Mart observed C.P. discard some merchandise packaging and noticed that he had a large bulge underneath his shirt. Suspecting that C.P. was shoplifting, the assistant manager confronted him and asked him to return the merchandise that he was attempting to conceal underneath his shirt. When C.P. refused, the assistant manager called the police. Shortly thereafter, a police officer arrived and asked C.P. to reveal what he was concealing underneath his shirt. As C.P. complied, the officer saw what appeared to be the handle of a handgun. Fearing that C.P. was carrying a weapon, the officer arrested him. After doing so, the officer discovered that the object underneath C.P.'s shirt was indeed a flare gun, which C.P. had shoplifted.
In conducting a further search of C.P., the officer found two small baggies, one containing a substance that field-tested positive for cocaine, two throwing knives, and two pieces of paper, upon which were various drawings, writings, and a list of area gun stores. The officer determined that the drawings and writings depicted symbols and codes associated with the 55 Mafia, which was a known subset of the larger Bloodz street gang. As the officer was inspecting the drawings, C.P. spontaneously stated that he was "a 103" in that gang and that "this don't mean nothing to me." Consequently, the officer called for the assistance of a vice officer, who was more experienced in dealing with gang members *289 and who arrived a short time later. Both officers further observed that C.P. was wearing colors associated with the Bloodz and that his hands bore scars, which he admitted were the result of the removal of a gang tattoo. In addition, C.P. later told the vice officer that he had been "blessed in" to the gang based on his older brother being a member.
A complaint and a delinquency petition were filed in juvenile court, charging C.P. with possession of cocaine, participation in criminal street gang activity, theft by shoplifting, and carrying a concealed weapon. At C.P.'s bench trial, the Wal-Mart assistant manager and the responding officer testified regarding the events leading up to C.P.'s arrest. In addition, both the responding officer and the vice officer testified regarding their knowledge of and experience with the 55 Mafia and Bloodz gangs and regarding the evidence showing that C.P. was associated with those gangs. As a result, the juvenile court found that sufficient evidence supported all the charges against C.P. and adjudicated him delinquent. Thereafter, C.P. retained new counsel, and the trial court granted his motion for an out-of-time appeal. This appeal followed.
C.P. contends that the evidence was insufficient to support the juvenile court's finding that he committed the crime of participation in criminal street gang activity under OCGA § 16-15-4(a). Specifically, he makes the somewhat overlapping argument that the State failed to prove that he was associated with two or more persons constituting a gang and that it failed to prove that he was associated with a group that engaged in criminal gang activity. We disagree.
OCGA § 16-15-4(a) makes it "unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal street gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3." Accordingly, OCGA § 16-15-4(a) "must be read in conjunction with the definitions of `criminal gang activity' and `criminal street gang' in OCGA § 16-15-3." Rodriguez v. State.[9] OCGA § 16-15-3(1) defines "criminal gang activity" as "the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit any of [certain enumerated] offenses on or after July 1, 2006...." OCGA § 16-15-3(2) defines "criminal street gang" as
any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in paragraph (1) of this Code section. The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics. Such term shall not include three or more persons, associated in fact, whether formal or informal, who are not engaged in criminal gang activity.
Additionally, our Supreme Court has recently held that a conviction under OCGA § 16-15-4(a) requires that there "be some nexus between the [enumerated] act and an intent to further street gang activity." (Punctuation omitted.) Rodriguez, supra, 284 Ga. at 807(1), 671 S.E.2d 497.
In this matter, both officers testified that based on their training and experience they were familiar with the Bloodz gang and its smaller offshoot, the 55 Mafia. The vice officer testified generally that he had made arrests of Bloodz gang members for engaging in criminal gang activity. Both officers also testified that C.P. was wearing colors associated with the Bloodz gang and that the pieces of paper he was carrying depicted symbols and codes associated with the Bloodz and the 55 Mafia. In addition, C.P. admitted to being a gang member to the responding officer at the time of his arrest and later told the vice officer that scars on his hand were the result of removing a gang tattoo and that he had been "blessed in" to the gang as a result of his older brother's membership. Thus the evidence was sufficient to support the juvenile court's findings that C.P. was a member of a criminal street gang, which was involved in criminal gang activity.
The evidence also demonstrated that C.P. committed the enumerated offenses of *290 carrying a concealed weapon and theft by shoplifting referenced by OCGA § 16-15-3(1)(A), (J).[10] Additionally, both officers testified that it was their opinion, based on their training and experience, that C.P. stole the flare gun and carried the concealed knives and the list of area gun stores with the intent to further his gang activity. Indeed, such intent could also be inferred from C.P.'s bragging of his gang affiliation and his response that "this don't mean nothing to me" when the stolen flare gun, concealed knives, and writings were discovered on his person at the time of his arrest.
Citing Green v. State,[11] C.P. argues that the officers' testimony regarding the existence of the Bloodz and the 55 Mafia gangs was not based on their personal knowledge and therefore constituted inadmissible hearsay, which could not support a conviction. This argument is not persuasive. First, Green was decided under the former version of OCGA § 16-15-3(2),[12] which required that the State prove a "pattern of criminal gang activity" by showing the commission of two or more offenses. Thus, the holding is not directly applicable here. More importantly, C.P.'s argument is belied by the vice officer's testimony that he was familiar with the Bloodz and the 55 Mafia and had been personally involved in the arrest of Bloodz gang members. Thus, the evidence was sufficient to support the juvenile court's finding that C.P. committed an act which, had he been an adult, would have resulted in a conviction of participation in criminal street gang activity. Accordingly, we affirm the juvenile court's adjudication of delinquency.
Judgment affirmed.
ADAMS and DOYLE, JJ., concur.
NOTES
[1] OCGA § 16-13-30(a).
[2] OCGA § 16-15-4(a).
[3] OCGA § 16-8-14(a)(1).
[4] OCGA § 16-11-126(a).
[5] In the Interest of A.D., 282 Ga.App. 586, 587(1), 639 S.E.2d 556 (2006).
[6] Jackson v. Virginia, 443 U.S. 307, 319(III)(B), 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[7] In the Interest of T.T., 282 Ga.App. 527, 528, 639 S.E.2d 538 (2006).
[8] In the Interest of T.N., 254 Ga.App. 330, 331, 562 S.E.2d 374 (2002).
[9] Rodriguez v. State, 284 Ga. 803, 805(1), 671 S.E.2d 497 (2009).
[10] Although the State focused on the fact that C.P. committed the enumerated offense of carrying a concealed weapon, we note that OCGA § 16-15-3(1)(A) provides that enumerated offenses also include "[a]ny offense defined as racketeering activity by Code Section 16-14-3." OCGA § 16-14-3(9)(A)(ix) includes theft within the definition of racketeering activity.
[11] Green v. State, 266 Ga. 237, 239(2), 466 S.E.2d 577 (1996).
[12] See Ga. L. 1992, p. 3236, § 1; Ga. L. 2006, p. 519, § 1.