A09A1041. IN THE INTEREST OF X. W., a child.
A09A1042. IN THE INTEREST OF B. W., a child.

(688 SE2d 646)

BARNES, Judge.

The appellants in these appeals, X. W. and B. W., were involved in a fight at Fayette County High School. Both were adjudicated delinquent for felony gang activity pursuant to OCGA § 16-15-4 and for disrupting a public school. B. W. was also adjudicated delinquent based on the offense of affray.

In considering an appeal from an adjudication of delinquency,

---

this Court views the evidence in a light favorable to the juvenile court's findings. See *In the Interest of A. M. A.*, 266 Ga. App. 273 (596 SE2d 756) (2004). "In reviewing such cases, we do not weigh the evidence or determine witness credibility." *In the Interest of A. D.*, 282 Ga. App. 586, 587 (1) (639 SE2d 556) (2006).

Viewed in that light, the evidence shows that during school, appellant X. W. approached another student, J. M., and asked him about the history of the Bloods gang because J. M. apparently pretended to be in the gang. X. W. advised J. M. that he needed to know the Bloods' history or "knowledge" or the "other Bloods in the school would eat [him] alive." X. W. told J. M. "a lot of Blood history that [he] did not know," and told him that if he wanted to "get down with the real stuff, I'll put you in."

On November 1, 2007, X. W. told J. M. to go to a specific bathroom at a designated time for his gang initiation. The boys went to the bathroom during lunch period, and J. M. fought appellant B. W., who was purportedly a member of a rival gang, the "Crips." Fighting a member of the Crips is one of the ways to be initiated into the Bloods gang. B. W. was fighting to get his rank in the Crips back up because he had lost respect when "his [gang] flag was taken by a girl on the bus . . . and in the course of trying to get it back, it ripped." There were several other boys present during the fight, including A. S., a second member of the Crips gang. Two of the boys present recorded the fight, and it was later posted on a MySpace page. After the fight, X. W. gave J. M. a Bloods' "Book of Knowledge" — a booklet containing gang history and jargon.

Approximately one week after the fight, based on an anonymous note, school officials began investigating the incident. They questioned B. W., who admitted to being in the fight, and a search of his locker produced his "Book of Knowledge." X. W. had twice before been questioned about his gang affiliation because of gang graffiti written on his desk, and school officials, at that time, had also recovered two copies of the "Book of Knowledge" from his locker. After the fight, X. W. was questioned again about his gang activities, and another "Book of Knowledge" was found in his possession.

## Case No. A09A1041

1. X. W. first argues that the delinquency petition failed to "allege that [X. W.] held or occupied a position of an organizer, supervisory position or any other position of management, an essential element of OCGA § 16-15-4 (e)."

The petition charged that X. W. participated in criminal street gang activity pursuant to OCGA § 16-15-4 (e) in that he "did engage in directly or indirectly, criminal gang activity, a crime of violence in

the State of Georgia, as defined in [OCGA §] 16-15-3 (1) (J), to wit: said child did organize and promote an affray between J. M. and B. W. for purposes of promoting their status in rival gangs." OCGA § 16-15-4 (e) provides that "[i]t shall be unlawful for any person who occupies a position of organizer, supervisory position, or any other position of management with regard to a criminal street gang to engage in, directly or indirectly, or conspire to engage in criminal gang activity."

X. W.'s argument appears to be that the petition should have explicitly stated that X. W. held a position in management as an organizer in the gang, not simply that he "organized" this particular fight. He maintains that occupying a position of gang management as an organizer is an essential element of the crime and that the evidence was insufficient to show that X. W. occupied a "position of organizer, supervisory position, or any other position of management." This argument, however, is belied by the evidence which shows that X. W. instructed J. M. on becoming a Bloods member, organized the fight for J. M. and B. W., and gave J. M. the "Book of Knowledge." There was also evidence that J. M. paid X. W. a "gang tax," and that X. W. referred to himself as a "3 star lieutenant" in the Bloods gang.

Further, under OCGA § 16-15-3 (1) (J), "criminal gang activity" includes "[a]ny criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed." X. W. was adjudicated delinquent for organizing and promoting an affray. Pursuant to OCGA § 16-11-32 (a), an affray is a criminal offense defined as "the fighting by two or more persons in some public place to the disturbance of the public tranquility." This offense would clearly fall within the criminal conduct contemplated by OCGA § 16-15-3 (1) (J).

2. X. W. also argues that the petition failed to allege that three or more persons were associated with the gang activity. He maintains that neither of the delinquency petitions under which he was charged set forth that it must be proved, as an essential element, that three or more persons were associated in fact with the alleged gang, whether informally or formally.

Under OCGA § 16-15-3 (2),

"[c]riminal street gang" means any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in paragraph (1) of this Code section. The existence of such organization, association, or group of

individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics.

However, the statute clearly contemplates that common names and symbolic identifiers may be used to establish the existence of a gang and that its members are "associated in fact." OCGA § 16-15-3. To that end, we have held that evidence of symbols, tattoos, graffiti, attire, or other distinguishing characteristics may establish the existence of a "criminal street gang."

In *In the Interest of C. P.*, 296 Ga. App. 572, 575 (675 SE2d 287) (2009), the juvenile defendant was found to be part of a criminal street gang under OCGA § 16-15-3 (2) and to have committed the crime of participation in criminal street gang activity under OCGA § 16-15-4 (a) because officers testified that, based on their experience and training,

C. P. was wearing colors associated with the Bloodz gang and that the pieces of paper he was carrying depicted symbols and codes associated with the Bloodz and the 55 Mafia. In addition, C. P. admitted to being a gang member to the responding officer at the time of his arrest and later told the vice officer that scars on his hand were the result of removing a gang tattoo and that he had been "blessed in" to the gang as a result of his older brother's membership.

Id. at 575.

Here the juvenile and gang investigator for the Fayetteville Police Department testified that he had over 120 hours of gang-specific training. He testified that he was familiar with the gang Young Blood Disciples, also known as "YBD" and the "Bloods." He further testified that the gang operates primarily in the United States, and that there are more than three people in the gang. The officer also testified that, based on his experience, giving another person a "Book of Knowledge" or "taxing" someone was information he would use to determine gang membership.

While our Supreme Court in *Rodriguez v. State*, 284 Ga. 803, 808 (2) (671 SE2d 497) (2009), observed "that OCGA § 16-15-3 (2) does not in any way indicate that this particular requirement is fulfilled merely by 'evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics,' " and that "[a]n isolated offense by a single member does not fulfil that requirement," the Court did not hold, as the defendant argues, that OCGA § 16-15-3 (2) requires that three persons must

YALE LAW LIBRARY

engage in the particular incident in question. Rather, the Court directed that for purposes of defining a criminal street gang, "the actor is the group acting through its members." Id. at 806. It emphasized that, to that end, in committing the specific offense, the defendant is required to have "knowledge of the gang's criminal activities and a specific intent to further its criminal purposes." Id. at 807.

Accordingly, based on the officer's testimony regarding his familiarity with the Bloods gang and that there were more than three members of the Bloods gang, and J. M.'s testimony that X. W. facilitated the affray to further a gang activity, specifically J. M.'s membership in the Bloods, the evidence was sufficient to support the juvenile court's finding that X. W. committed an act which, had he been an adult, would have resulted in a conviction of participation in criminal street gang activity.

### Case No. A09A1042

In two enumerations of error, B. W. also essentially argues that the evidence was insufficient because the State did not establish that he was "associated in fact" with at least two other persons engaged in criminal gang activity; that there were no common identifying signs, attire, tattoos or other characteristics that would suggest that he was part of a gang; and that an affray is not a crime of violence. We do not agree.

3. B. W. argues that "associated in fact" requires action in concert with the larger unit — the Crips, and not as an individual who self-identifies as a Crip. He also argues that the evidence established that only one other designated "Crip" was present in the bathroom during the fight, rather than the statutorily required three.

As noted earlier, per *Rodriguez*, "the actor is the group acting through its members," and in designating the specific offense committed by the actor as "gang related," the defendant is required to have "knowledge of the gang's criminal activities and a specific intent to further its criminal purposes." *Rodriguez*, supra, 284 Ga. at 807. Here, B. W. told the investigating officer that he was a member of the Crips gang. He further admitted to committing the affray with J. M. because fighting a member of the Bloods would get "his rank back up," which had fallen because of a "disrespect or violation issue" when a girl ripped his Crips flag. The investigating officer further testified that he was familiar with the Crips gang, the gang was operating in Fayette County, and that there were more than three people in the Crips gang.

This evidence was sufficient under *Jackson v. Virginia*, 443 U. S.

307 (99 SC 2781, 61 LE2d 560) (1979), to support B. W.'s adjudication of delinquency for participation in criminal street gang activity and the crime of affray. See *In the Interest of C. P.*, supra, 296 Ga. App. at 575.

4. B. W. also argues that an affray is not a crime of violence. An affray is defined as "the fighting by two or more persons in some public place to the disturbance of the public tranquility." OCGA § 16-11-32 (a). B. W. characterizes an affray as a crime of consent. That the combatants consent to fight does not negate that fighting is an act of violence. Further, B. W. does not support this argument with any relevant or supportive case law. Pursuant to OCGA § 16-15-3 (1) (J), "criminal gang activity" includes "[a]ny criminal offense . . . that involves violence . . . whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed." The offense of affray meets this definition.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 16, 2009 —
RECONSIDERATION DENIED DECEMBER 15, 2009 — 

*Brian Steel*, for appellant (case no. A09A1041).
*Joseph S. Key*, for appellant (case no. A09A1042).
*Scott L. Ballard, District Attorney, Robert W. Smith, Jr., Christy R. Jindra, Assistant District Attorneys*, for appellee.