**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**June 5, 2012**

# In the Court of Appeals of Georgia

A12A0627. SMOOT v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Ebony Shaun Smoot of keeping a place of prostitution and possession of less than one ounce of marijuana, and the trial court denied her motion for new trial. On appeal, Smoot contends that there was insufficient evidence to support her conviction for keeping a place of prostitution, and she maintains that the trial court erred in denying her motion for a directed verdict of acquittal on the possession of marijuana charge, in overruling her objections to the admission of certain evidence, and in failing to give her requested jury charges on equal access, mere presence, and mere spatial proximity to drugs.

While the trial court acted within its discretion in admitting most of the evidence challenged by Smoot on appeal, we conclude that Smoot's conviction for

keeping a place of prostitution must be reversed because the trial court erroneously allowed the State to introduce into evidence highly prejudicial hearsay statements of a neighborhood group to explain why officers were investigating Smoot's residence. And, because the remaining competent evidence does not exclude every reasonable hypothesis except that of guilty, double jeopardy principles preclude a retrial on the keeping a place of prostitution charge. In contrast, we affirm Smoot's conviction for possession of less than one ounce of marijuana for the reasons set forth below.

Following a criminal conviction, the defendant is no longer presumed innocent, and we construe the evidence in the light most favorable to the jury's verdict. *Towry v. State*, 304 Ga. App. 139 (695 SE2d 683) (2010). So viewed, the evidence showed that on the afternoon of September 27, 2010, after receiving complaints from the community about suspicious activity, two police officers conducted surveillance of a residence located in Clayton County. Smoot lived at the residence along with several other women.

During the surveillance of the residence, the officers observed a car pull into the driveway. An unidentified male got out of the car and entered the residence. He remained inside for a short period of time and then left in his car. After initiating a traffic stop and speaking with him, the two officers, along with a police lieutenant,

2

conducted an independent investigation of certain websites by personally viewing their content.

As part of their investigation, the officers and lieutenant reviewed advertisements posted on Backpage.com and Craigslist.org, in addition to a separate website with the URL address of www.ifshewontiwill.com (the "Ifshewontiwill website"). The officers and lieutenant later testified that the web pages included "provocative" and "risque" photographs of semi-nude and nude women advertising "sexual services" and "sexual behaviors" for money and providing contact phone numbers. The Ifshewontiwill website included photographs of Smoot, and the advertisements posted on Backpage.com and Craigslist.org listed contact phone numbers linked to Smoot.

Based upon the content of the web pages and their interview of the male driver, the officers applied for and obtained a search warrant for the residence. The warrant was executed on September 30, 2010. Upon entry, the police found several occupants in the residence, including Smoot. She was discovered "somewhat" undressed in the closet in the upstairs master bedroom. The police found marijuana in the master bedroom on a dresser in a closed wooden box and in plain view in several other areas upstairs, on the kitchen counter, and on a computer desk in the living room.

According to one of the officers, a "stripper pole" was set up in the living room as well.

The police also found two types of business cards in the residence. The first business card contained the heading "Adult Social Network." The card listed the web address of the Ifshewontiwill website and contained the statements "True Freaks ONLY!!!!," "Ready to Have Some Fun," and "Created by Gold," which Smoot admitted was her nickname. The second business card listed "Ms. Shauna Gold" as the "HBIC/CEO" of "All You Need Entertainment." The card included the address of the residence and claimed "10-20 Entertainers always available" and "Appointments taken 24/7."

Smoot was arrested and charged with keeping the residence as a place of prostitution. A person commits the offense of prostitution "when he or she performs or offers or consents to perform a sexual act, including but not limited to sexual intercourse or sodomy, for money or other items of value." OCGA § 16-6-9. In turn, the offense of keeping a place of prostitution has four elements: "a person must (1) knowingly grant or permit the use (2) of a place that offers seclusion or shelter (3) over which [s]he has or exercises control (4) to be used for the purpose of prostitution." Robert E. Cleary, Jr., Kurtz Criminal Offenses and Defenses in Georgia,

Prostitution and Related Offenses, p. 1379 (2011 ed.). See OCGA § 16-6-10.[1] The indictment alleged that Smoot committed the offense of keeping a place of prostitution by knowingly permitting her Clayton County residence to be used for the purpose of prostitution.

Smoot also was arrested and charged with possession of less than one ounce of marijuana. The other occupants of the residence were charged with the same offense in the same indictment. The other occupants pled guilty to the marijuana charge, while Smoot chose to proceed with trial on both the marijuana charge and the keeping a place of prostitution charge.

At trial, the State relied upon the testimony of the two investigating officers who had conducted the surveillance of the residence and who had been involved in the execution of the search warrant, as well as the testimony of the lieutenant who had assisted the officers in reviewing the web pages. During the testimony of one of the officers, the trial court allowed the State to introduce into evidence, over objection, the affidavit that the officer submitted in applying for the search warrant. Among

---

[1] OCGA § 16-6-10 provides: "A person having or exercising control over the use of any place or conveyance which would offer seclusion or shelter for the practice of prostitution commits the offense of keeping a place of prostitution when he knowingly grants or permits the use of such place for the purpose of prostitution."

5

other things, the affidavit stated that the police had received complaints from "Concerned Clayton Community DEMANDING Change" that "OPEN PROSTITUTION" was occurring at Smoot's residence, and further stated that the neighborhood group had provided the police with "over 25 vehicle descriptions" of cars that had been seen coming and going from the residence for purposes of prostitution.[2] The trial court ruled that the affidavit was admissible because it constituted original evidence that was introduced not to prove the truth of the matters asserted in it, but to explain to the jury why the officers were investigating the residence. The trial court also allowed the affidavit to go out with the jury during its deliberations.

On the identical ground, the trial court allowed the State to introduce, over objection, a document that had been prepared by the same neighborhood group and had been submitted by them to the police. The document alleged that "OPEN PROSTITUTION" was occurring at Smoot's residence and contained a list of multiple vehicles seen by members of the group coming and going from there over a few days.

---

[2] Some information was redacted from the affidavit, including statements made by the male who had been stopped by the investigating officers after he drove away from the residence during the surveillance operation.

6

Also over objection, the trial court allowed the State to introduce testimony from the investigating officers and the police lieutenant about the content of the web pages they had reviewed, as well as printouts of the Ifshewontiwill website and of the advertisements posted on Craigslist.org. The printout of the Ifshewontiwill website contained photographs of women posing provocatively in various stages of undress, including photographs of Smoot that appeared under the name "Gold." The website claimed "If She Won't I Will 100% Satisfaction Guaranteed," stated that the business focused on "high-quality service" and "customer satisfaction," and listed "a variety of offerings to choose from," namely, "Partially / fully nude [c]leaning, "Partially / fully nude cooking," "Modeling," "Dancing (private and parties)," "Girl / Girl Shows," "Web Cam Shows," "Escorting (companionship to events)," "X. X. X.," and "Personal Adult Films." The printouts of the advertisements posted on Craigslist.org were from the "adult services" section of that website and contained similar provocative photographs of women along with contact phone numbers.

Following the close of evidence, the jury convicted Smoot of both charged offenses. Smoot moved for a new trial, and the trial court denied her motion. This appeal followed.

1. Smoot maintains that the trial court erred in ruling that the search warrant affidavit, which contained hearsay statements from the neighborhood group purportedly linking her residence to prostitution, was admissible as original evidence to explain to the jury why the officers were investigating her residence. She further maintains that the error in admitting the affidavit was harmful and should result in the reversal of her conviction for keeping a place of prostitution. We agree.

OCGA § 24-3-2 provides: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." But it is well-settled Georgia law, emphasized time and again by our Supreme Court and by this Court, that

> [o]nly in rare instances will the conduct of an investigating officer need to be explained. Otherwise, it is error to permit an investigating officer to testify, under the guise of explaining the officer's conduct, to what other persons related to the officer during the investigation. The mere circumstance of an officer's initiation and continuation of an investigation, without more, is not a relevant inquiry.

(Citations and punctuation omitted.) *White v. State*, 273 Ga. 787, 788 (1) (546 SE2d 514) (2001). See, e. g., *Weems v. State*, 269 Ga. 577, 578-579 (2) (501 SE2d 806)

8

(1998); *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984); *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982); *Foster v. State*, __ Ga. App. __ (2) (Case No. A11A2312, decided on March 7, 2012); *Doyal v. State*, 287 Ga. App. 667, 669-670 (2) (653 SE2d 52) (2007); *Collins v. State*, 263 Ga. App. 601, 602 (1) (588 SE2d 799) (2003).

Here, there was no necessity justifying introduction of the search warrant affidavit containing hearsay from the neighborhood group, "as the police are expected to investigate crimes, and no explanation of [that] fact is needed." *Strozier v. State*, 236 Ga. App. 239, 240 (1) (511 SE2d 295) (1999) (officer's hearsay testimony about information he received while canvassing neighborhood not admissible as original evidence). Indeed, our Supreme Court has held that hearsay is not admissible to explain police conduct even in cases "where an appellate court suggests that the jury may find police behavior so inexplicable as to cast doubt on the prosecution." *Weems*, 269 Ga. at 579 (2). If the State was concerned that the jury might be confused about why the officers were conducting surveillance of Smoot's residence, it could have simply had the officers testify that they decided to initiate the surveillance because that was the direction their investigation to date had led them. See *McKenzie v. State*, 271 Ga. 47, 48 (2) (518 SE2d 404) (1999). Accordingly, the trial court erred in

9

allowing the State to introduce into evidence the search warrant affidavit containing hearsay from the neighborhood group that purportedly linked Smoot's residence to prostitution, the introduction of which effectively allowed Smoot "to be tried based on rumor, gossip, and speculation." (Punctuation omitted.) *Strozier*, 236 Ga. App. at 240 (1). See also *Doyal*, 287 Ga. at 669-670 (2) (officer's hearsay testimony about complaints he received that the defendant was selling drugs was inadmissible as original evidence).

The standard for weighing non-constitutional error in criminal cases is whether it is highly probable that the erroneously admitted evidence did not contribute to the judgment. *Leverette v. State*, 303 Ga. App. 849, 852 (2) (696 SE2d 62) (2010). Given that the State's case against Smoot for keeping a house of prostitution was entirely circumstantial, and in light of the highly inculpatory hearsay statements contained in the search warrant affidavit, we cannot say that admission of the affidavit was harmless. Consequently, Smoot's conviction for keeping a house of prostitution must be reversed. Moreover, as discussed below in Division 5, the remaining competent evidence is insufficient to support Smoot's conviction, and thus double jeopardy principles preclude her from being retried for that offense. See *Burks v. United States*, 437 U. S. 1, 18 (III) (98 SC 2141, 57 LE2d 1) (1978) (when there is insufficient

evidence to support a conviction, the defendant cannot be retried without violating the Double Jeopardy Clause of the United States Constitution).

2. Smoot also contends that the trial court erred in ruling that the State could introduce the document that the neighborhood group submitted to the police, given that the document claimed that prostitution was occurring at Smoot's residence and listed numerous vehicles that the group had seen coming and going from there over several days. Like the search warrant affidavit, the trial court ruled that the document was admissible as original evidence to explain to the jury why the officers were investigating Smoot's residence. According to Smoot, the document was inadmissible hearsay, the State had no justifiable basis for introducing the document to explain the officers' reasons for the investigation, and its admission was highly prejudicial in her prosecution for keeping a place of prostitution. Again, we agree. The trial court committed reversible error in admitting the document for the same reasons discussed in Division 1.

3. Smoot further argues that the trial court erred in allowing the State to elicit testimony from the investigating officers and the police lieutenant describing the photographs and advertisements contained in the web pages that they reviewed as part of their investigation. According to Smoot, the witness's description of the

photographs and advertisements viewed on the websites constituted inadmissible hearsay.[3] We do not agree.

> [T]he admission of evidence is committed to the sound legal discretion of the presiding judge, whose determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. Moreover, hearsay evidence is defined as that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons; and hearsay generally relates to an out-of-court statement made by someone other than the witness. Therefore, by definition, evidence is hearsay when a witness at trial offers evidence of what someone else said or wrote, outside of court, and the proponent's use of the evidence essentially asks the jury to assume that the out-of-court declarant was not lying or mistaken when the statement was made.

(Punctuation and footnotes omitted.) *McClain v. State*, 311 Ga. App. 750, 752 (716 SE2d 829) (2011). See OCGA § 24-3-1 (a).

---

[3] Given that Smoot's enumeration of error pertains only to the issue of hearsay, our opinion does not address whether or to what extent the best evidence rule applies in cases involving website content. Nor do we address whether the testimony of the investigating officers and the police lieutenant included inadmissable opinion evidence in violation of OCGA § 24-9-65, see, e. g., *Dawson v. State*, 283 Ga. 315, 319-321 (4) (658 SE2d 755) (2008), because Smoot has not raised that issue on appeal.

12

We have pointed out that "testimony describing contents of a photograph [does] not refer to any statements and thus [is] not hearsay." *Hammock v. State*, 311 Ga. App. 344, 345 (1) (715 SE2d 709) (2011). See *McClain*, 311 Ga. App. at 752-753, n. 13; *Lott v. State*, 303 Ga. App. 775, 784-785 (4) (694 SE2d 698) (2010). Testimony regarding the content of photographs does not "ask the jury to assume the truth of out-of-court statements made by others, and instead the value of the testimony rest[s] on the [testifying witness's] own veracity and competence." (Punctuation and footnote omitted.) *McClain*, 311 Ga. App. at 752. Thus, the testimony of the investigating officers and lieutenant describing the content of the photographs on the web pages was not hearsay.

Nor did the testimony describing the web page advertisements, which the officers and lieutenant testified offered "services" in return for money, constitute inadmissible hearsay. An offer of services in return for money is in the nature of a "verbal act" or "performative utterance" rather than a declarative assertion, and, therefore, has probative value arising from the very fact that it was said, rendering it admissible as original evidence. See *Stubbs v. Dubois*, 306 Ga. App. 171, 173 & n. 5 (702 SE2d 32) (2010) (letter containing offer constituted a "verbal act" and therefore was "by definition not hearsay but original evidence"); *Shealy v. State*, 142

13

Ga. App. 850 (1) (237 SE2d 207) (1977) (conversation with woman "about the prices for certain sexual services" was admissible as "verbal conduct" and did not constitute hearsay); *Fitzgerald v. State*, 10 Ga. App. 70, 74-77 (72 SE2d 541) (1911) (statement of woman to man on train that "I charge $2 for my pleasure" constituted "verbal act" and was admissible because the words themselves had "probative value as conduct"). See generally *United States v. Montana*, 199 F3d 947, 950 (7th Cir. 1999) (discussing "verbal acts" or "performative utterances" and noting that they "are not within the scope of the hearsay rule"). It follows that the trial court did not abuse its discretion in admitting the testimony regarding the content of the web pages.[4]

4. Smoot also argues that the trial court erred in admitting printouts from the Ifshewontiwill website and from Craigslist.org because (a) the State failed to lay a proper foundation for their admission and (b) the content of the printouts constituted inadmissible hearsay. We conclude that the trial court acted within its discretion in

---

[4] While Smoot also argues that the admission of the testimony about the web pages violated her Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U.S. 36 (124 SC 1354, 158 LE2d 177) (2004), the Confrontation Clause does not bar the admission of statements for purposes other than establishing the truth of the matter asserted. Id. at 59 (IV); *Tennessee v. Street*, 471 U.S. 409, 414 (II) (A) (105 SC 2078, 85 LE2d 425) (1985). Thus, admission of testimony regarding the photographs and the advertising content on the web pages was not barred by the Sixth Amendment. See *Weems*, 295 Ga. App. at 683 (3), n. 2 (Confrontation Clause did not bar admission of statements that constituted original evidence).

admitting the printouts from the Ifshewontiwill website, but not the printouts from Craigslist.org.

(a) As to whether the State established a proper foundation for introducing the printouts, we note that printouts from electronic computer sources are subject to the same rules of authentication as other documents. See *Hammontree v. State*, 283 Ga. App. 736, 739 (3) (642 SE2d 412) (2007); *Simon v. State*, 279 Ga. App. 844, 847 (2) (632 SE2d 723) (2006). "As a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. There is no presumption of authenticity, and the burden of proof rests upon the proffering party to establish a prima facie case of genuineness." (Punctuation and footnote omitted.) *Hollie v. State*, 298 Ga. App. 1, 3 (1) (679 SE2d 47) (2009).

"Printouts of [w]eb pages must first be authenticated as accurately reflecting the content of the page and the image of the page on the computer at which the printout was made" before they can be introduced into evidence. Kenneth S. Broun, 2 McCormick on Evidence § 227 (6th ed. 2006). See *Nighlight Sys. v. Nightlites Franchise Sys.*, No. 1:04-CV-2112-CAP, 2007 U. S. Dist. LEXIS 95538, at * 16 (N. D. Ga. May 11, 2007) (noting that "to authenticate a printout from a web page, the

proponent must present evidence from a percipient witness stating that the printout accurately reflects the content of the page and the image of the page on the computer at which the printout was made"). Then, to be relevant and material to the case at hand, the printouts often will need to be further "authenticated as having been posted by a particular source." 2 McCormick on Evidence, supra, § 227. See, e. g., *Twiggs v. State*, __ Ga. App. __ (2) (Case No. A11A1544, decided on March 27, 2012); *Hollie*, 298 Ga. App. at 3 (1).

With regard to the Ifshewontiwill website, one of the investigating officers testified that he made the printouts of the website, which were "a fair and accurate representation of the actual things" that he personally viewed on the website as part of his investigation. Moreover, the State presented circumstantial evidence that Smoot was the source of the website by introducing business cards found in her residence that were entitled "Adult Social Network," listed the web address for the Ifshewontiwill website, and contained the statement "Created by Gold," which Smoot admitted to police was her nickname. Smoot also admitted to the officers that she was "familiar" with the website. Under these circumstances, the State sufficiently authenticated the printouts from the Ifshewontiwill website to create a prima facie

16

case of genuineness. See generally *Simon*, 279 Ga. App. at 847 (2) (documents can be authenticated through circumstantial evidence).

We reach a different result with regard to the printouts from the Craigslist.org website. These printouts were introduced through the police lieutenant, but there was no testimony from her that the printouts fairly and accurately represented the contents of the website she personally viewed as part of her investigation. Accordingly, the State failed to elicit testimony sufficiently authenticating the printouts from Craigslist.org, and the trial court abused its discretion in admitting those printouts into evidence.

(b) As to the issue of hearsay, the content of the Ifshewontiwill website consisted of photographs of women, the first names or nicknames of the women, and advertising content, including a list of the "services" offered. The photographs and first names or nicknames appearing on the website were not hearsay. See supra Division 3; *Weems*, 295 Ga. App. at 684 (4) (testimony regarding nickname was "verbal act" not introduced to prove the truth of the matter asserted); *Wright v. State*, 226 Ga. App. 848, 850 (5) (487 SE2d 405) (1997) (testimony regarding first name was "verbal act" not introduced to prove the truth of the matter asserted). Furthermore, the advertising content of the website expressed an offer to perform

17

certain "services" for money, and, as such, was admissible as a "verbal act" or "performative utterance." See supra Division 3. The trial court thus did not abuse its discretion in admitting the printouts of the Ifshewontiwill website.[5]

5. Smoot asserts that there was insufficient evidence to convict her of keeping a place of prostitution because the State failed to prove beyond a reasonable doubt, with competent evidence, that her residence was being used for the purpose of prostitution. We are constrained to agree under the circumstances of this case. Thus, Smoot cannot be retried for keeping a place of prostitution without violating the Double Jeopardy Clause of the United States Constitution, which "forbids the State from conducting a second trial in order to gain a second opportunity to supply evidence of the defendant's guilt that it failed to muster in the first proceeding." (Punctuation and footnote omitted.) *Jones v. State*, 272 Ga. 900, 904-905 (4) (537 SE2d 80) (2000). See *Burks*, 437 U. S. at 18 (III).

In reviewing the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we ask whether the evidence, when viewed in the light most favorable to the verdict,

---

[5] The printouts from the website did not violate the Confrontation Clause for the same reasons discussed supra in footnote 4.

18

authorized a rational jury to have found the essential elements of the charged offense beyond a reasonable doubt. *Bryant v. State*, 309 Ga. App. 649 (1) (710 SE2d 854) (2011). We do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient under the *Jackson* standard. *Kelley v. State*, 308 Ga. App. 418, 421 (1) (707 SE2d 619) (2011).

In the present case, the State did not come forward with any eyewitness testimony or other direct evidence that Smoot's residence was being used for the purpose of prostitution, and when a conviction is predicated solely upon circumstantial evidence, "the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of guilt of the accused." *Kier v. State*, 292 Ga. App. 208, 210 (1) (663 SE2d 832) (2008).

> When the circumstantial evidence supports more than one theory, one consistent with guilt and another with innocence, it does not exclude every other reasonable hypothesis except guilt and is not sufficient to prove the defendant's guilt beyond a reasonable doubt. And while the jury generally determines whether every other reasonable alternative but guilt has been excluded, we must not be blinded by a verdict when a reasonable hypothesis of innocence appears from the evidence or lack thereof, and may declare such as a matter of law.

19

(Citations and punctuation omitted.) *Grant v. State*, 227 Ga. App. 243, 245 (488 SE2d 763) (1997).

To prove that Smoot's residence was being used for the purpose of prostitution, the State presented the following admissible circumstantial evidence: (1) the investigating officer's observance of the unidentified male driving up to the residence, going inside for a short time, and then driving away; (2) the business cards found in the residence; (3) the testimony of the investigating officers and lieutenant describing the contents of the web pages they investigated; and (4) the printouts from the Ifshewontiwill website. This circumstantial evidence, when construed in its totality, created a reasonable inference that Smoot's residence was being used for the purpose of prostitution.

But that does not end the matter. The investigating officers and lieutenant described the content of the web pages in general terms without referring to any specific acts that the photographed women offered to perform in return for money. In contrast, the printouts from the Ifshewontiwill website listed several specific "services" that would not constitute the crime of prostitution.[6] Thus, in the absence

---

[6] We express no opinion as to whether any of the "services" listed on the website could be prosecuted as crimes under some other provision of the Georgia Criminal Code.

20

of any additional evidence reflecting what actually took place inside the residence, the testimony and documentary evidence presented at trial did not exclude the reasonable hypothesis that the residence was being used for the purpose of commercial voyeurism or some other form of adult nude entertainment not rising to the level of prostitution. Accordingly, there was insufficient evidence to convict Smoot of keeping her residence as a place of prostitution. Compare *Ahn v. State*, 279 Ga. App. 501, 501-502 (1) (631 SE2d 711) (2006) (keeping a place of prostitution conviction affirmed, where undercover officer entered spa, and then a "spa employee not only touched the officer's genitals during the massage procedure, but eventually offered masturbation and oral sex services for specified prices"); *Snead v. State*, 127 Ga. App. 12, 12-13 (1) (192 SE2d 415) (1972) (keeping a place of prostitution conviction affirmed, where undercover officer entered house, a woman in the house made arrangements with him "for sexual relations for a price of $20," and the woman took his money, led him to a bedroom, and began to undress).

6. Smoot also argues that the trial court erred in denying her motion for a directed verdict of acquittal on the charge of possession of less than an ounce of marijuana. She maintains that the evidence was insufficient to support her conviction and that she was entitled to a directed verdict because she was merely present at the

21

residence, and other individuals had equal access to the places in the residence where the marijuana was found. We are unpersuaded.

"The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction." *Washington v. State*, 251 Ga. App. 206 (1) (553 SE2d 855) (2001). As noted in Division 5, that standard requires us to "view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," always mindful that weighing the evidence and determining witness credibility are for the jury. Id. See *Jackson*, 443 U. S. 307.

"In Georgia, it is unlawful for any person to possess any controlled substance, and possession of controlled substances may be actual or constructive." (Punctuation and footnote omitted.) *Davenport v. State*, 308 Ga. App. 140, 145 (1) (b) (706 SE2d 757) (2011). Although not in actual possession, a person who

> knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. To prove constructive possession, the State must establish a link between the defendant and the contraband that goes beyond mere spatial proximity. Such connection can be made where the evidence shows that the contraband was discovered on premises

22

occupied and controlled by the defendant with no right of equal access and control in others. Control may be inferred if the defendant owns or resides in the premises, but not if he is merely an occupant.

(Punctuation and footnotes omitted.) *Bussey v. State*, 263 Ga. App. 56, 57-58 (1) (a) (587 SE2d 134) (2003). "[S]o long as there is slight evidence of access, power, and intention to exercise dominion or control over the contraband, the question of fact as to constructive possession remains with the jury." *Davenport*, 308 Ga. App. at 145 (1) (b).

The State presented sufficient evidence that Smoot had constructive possession of the marijuana seized from the residence. The evidence showed that the police found marijuana in plain view in several areas of the residence, as well as in a closed wooden box in the master bedroom near the closet where Smoot was found during the search. And while her aunt was the owner of the residence, Smoot admitted to the police that she lived at the residence and slept in the master bedroom, thus permitting the jury to presume that she controlled the premises. See *Bussey*, 263 Ga. App. at 58 (1) (a).

While Smoot relies upon the equal access rule in an effort to overcome the evidentiary presumption of possession arising from the fact that she lived in the

residence, "the equal access rule does not apply to eliminate the presumption of possession where all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of the contraband." (Citation and punctuation omitted.) *Cabrera v. State*, 303 Ga. App. 646, 651 (1) (694 SE2d 720) (2010). See also *Warren v. State*, __ Ga. App. __ (1) (Case No. A11A2361, decided on Feb. 16, 2012). Because the State charged the other occupants of the residence with possession of the marijuana, the State was entitled to rely on the presumption to demonstrate that Smoot exercised possession and control over the marijuana, and she was not entitled to rely upon the equal access rule to rebut that presumption.[7] See id. Consequently, the evidence was sufficient to authorize Smoot's conviction for possession of less than an ounce of marijuana, and the trial court committed no error in denying her motion for a directed verdict of acquittal. See id.

7. Lastly, Smoot contends that the trial court erred in declining to charge the jury on mere presence and mere spatial proximity. We disagree.

---

[7] For the same reason, contrary to Smoot's assertion, the trial court properly denied her request for a jury charge on equal access. See *Wiggins v. State*, 258 Ga. App. 703, 704-705 (2) (574 SE2d 896) (2002).

24

While Smoot asserts that she was entitled to a charge on mere presence because her written request for the charge was a correct statement of the law and there was at least slight evidence to support it,

> the rule that mere presence at the scene of a crime is insufficient to convict is actually a corollary to the requirement that the State prove each element of the offense charged. Here, . . . the trial court correctly instructed the jury on the duty of the State to prove each element of the crime beyond a reasonable doubt and instructed the jury fully on the law of circumstantial evidence. Under such circumstances, there was no error in the refusal to give [Smoot's] requested charge. This is true even where the defendant asserts that "mere presence" was [her] sole defense.

(Citations and punctuation omitted.) *Torres v. State*, 298 Ga. App. 158, 159 (1) (679 SE2d 757) (2009).

Nor was the trial court required to charge the jury on mere spatial proximity, even if Smoot's request for such a charge was a correct statement of the law. "A trial court does not err in failing to give an appropriate request to charge, as written, when its charge as a whole contains the same principles of law set forth in the request." (Punctuation and footnote omitted.) *Tran v. State*, 246 Ga. App. 153, 160 (7) (539 SE2d 862) (2000). Here, the trial court instructed the jury that Smoot could not be convicted of possession of marijuana unless the State proved that she had the

requisite criminal intent; that criminal intent could not be presumed; that constructive possession requires that a defendant knowingly have both the power and intention to exercise authority or control over a thing; and that facts and circumstances that merely place upon a defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize a conviction. Under these circumstances, the trial court did not err in declining to give Smoot's requested charge on mere spatial proximity because the jury instructions as a whole adequately covered that principle. See id.

*Judgment affirmed in part; reversed in part. Adams and McFadden, JJ., concur.*