## A03A0058. DUGGER v. THE STATE.
## A03A0059. DANIELY v. THE STATE.
### (581 SE2d 655)

MIKELL, Judge.

In these related cases, the Superior Court of Taylor County revoked Marcell Dugger's and Justin Daniely's probation. We granted each defendant's application for discretionary review and affirm for the reasons set forth below.

Pursuant to OCGA § 42-8-34.1 (b), a court may revoke any part of any probated or suspended sentence if the defendant admits the violation as alleged or if the evidence produced at the revocation hearing establishes the violation by a preponderance of the evidence.[1] "This court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court."[2]

Dugger and Daniely were arrested for possession of cocaine on April 26, 2002. At that time, Dugger was serving a probated sentence under the First Offender Act for a sale of cocaine and Daniely was serving a probated sentence for hindering the apprehension of a

---

[1] See OCGA § 42-8-34.1 (b).
[2] (Citation and punctuation omitted.) *Cheatwood v. State*, 248 Ga. App. 617, 621 (2) (548 SE2d 384) (2001). Accord *Edwards v. State*, 173 Ga. App. 589, 591 (2) (327 SE2d 559) (1985).

criminal. The state filed petitions to revoke their probation. A hearing was held, and Dugger and Daniely were both charged with violating Conditions 1 and 3 of their probation: (1) "Do not violate the criminal laws of any governmental unit"; and (3) "Avoid persons or places of disreputable or harmful character." Dugger was also charged with violating his 8:00 p.m. curfew, which was a special condition of his probation.

Charles Turner testified that on the day in question, as he walked to a nearby store, he saw Dugger exit the driver's side of a car and enter an apartment building, while Daniely approached him and asked if he wanted to buy some crack cocaine. Turner testified that Daniely showed him a handful of dime bags of cocaine. Shortly thereafter, Turner approached two police officers and told them that Daniely tried to sell him cocaine.

Police Officer Lonnie Holder testified that Turner pulled him over, told him that two guys in a white Chevrolet tried to sell him crack cocaine, and pointed to Dugger's car. Officer Holder testified that he and his partner stopped the car and asked the driver, Dugger, if he tried to sell Turner cocaine. Dugger replied that he had not, and that he did not know what the officer was talking about. Officer Holder's partner walked around to the passenger side of the car and saw crack cocaine near Daniely. The stop, arrest, and the cocaine were captured on a videotape, which was played during the hearing.

Officer Holder testified that he seized two rocks of suspected crack cocaine from the passenger's side of the car, took it back to his office, and placed it on his desk at approximately 3:00 the next morning. When he returned to work later that morning, the bags of cocaine were gone.

Dugger testified that as he was coming from town that day, Daniely stopped him and asked for a ride to a pool room. After picking up Daniely, Dugger stopped at his grandmother's house to use the phone; then he and Daniely drove toward the pool room. The police stopped them, and Officer Holder asked if someone had tried to sell some dope. Dugger said no. Dugger admitted on cross-examination that at the scene, he stated that Daniely showed him the crack cocaine before the police stopped them; that he knew that Daniely was looking for someone to sell the drugs to; and that he told Daniely not to do it before he went into his grandmother's house.

Daniely testified that he did not have drugs in his possession on the day in question and knew nothing about the drugs in Dugger's car. Further, he claimed that he was with Dugger because he had helped him to send a money order. Daniely testified that he and Dugger went into Dugger's grandmother's house and that earlier that day, Dugger picked up and dropped off two other individuals.

After hearing the evidence, the trial judge revoked Dugger's first

offender status, finding that he had violated Condition 1 of his probation by possessing cocaine and Condition 3 by associating with a disreputable character, defendant Daniely, and that he violated his 8:00 p.m. curfew. Dugger was sentenced to serve five years in confinement. As to Daniely, the trial judge revoked the remainder of his probation, finding that he had also violated Condition 1 of his probation by possessing cocaine and Condition 3 by associating with a person of disreputable character, defendant Dugger.

## Case No. A03A0058

On appeal, Dugger asserts three errors: (1) his due process rights were violated by the negligent handling of the substance taken from his vehicle; (2) the evidence that he possessed cocaine was insufficient; and (3) the trial court's findings that he violated his curfew and associated with a disreputable character were erroneous. We affirm.

1. Dugger argues that he was denied the right to prove himself innocent because he was unable to test the substance taken from his car due to the police officer's negligence. We disagree.

Our Supreme Court held in *Patterson v. State*[3] that "[w]here the defendant's conviction or acquittal is dependent upon the identification of the substance as contraband, due process of law requires that analysis of the substance not be left completely within the province of the state."[4] In this case, Dugger's conviction or acquittal for possession of cocaine is not before the court. However, even if we were to apply *Patterson* to probation revocations, we could not find that the trial court abused its discretion in this case because the revocation of Dugger's probation was not dependent solely upon the actual identification of the substance.

Officer Holder and Turner identified the substance as crack cocaine. Dugger admitted that Daniely showed him the crack cocaine before attempting to sell it. Furthermore, in the recorded conversations between Dugger and Daniely, as recounted by Officer Holder, the defendants repeatedly refer to the substance as "dope." They discussed who put the dope in the car. At one point, Dugger told Daniely, "I thought you threw it out. It ain't my dope." Dugger asked Daniely why he put the dope in the car, and Daniely replied, "I didn't put that dope in your car." Because there was other evidence from which the trial court could determine by a preponderance of the evidence that the substance was cocaine, Dugger's due process rights were not violated.

---

[3] 238 Ga. 204 (232 SE2d 233) (1977).
[4] Id. at 206.

*State v. Blackwell*,[5] the case upon which Dugger relies in support of his argument, is inapposite. In *Blackwell*, the state destroyed the defendant's urine sample despite its known exculpatory value — the sample tested negative for drugs in the state-administered field test — and despite the court's order that the defendant be given access to the sample.[6] Conversely, this case does not involve the destruction of evidence nor was there any evidence that the substance would have proven exculpatory. Rather, both defendants repeatedly referred to the substance as "dope," and there was other testimony that the substance was crack cocaine.

2. Next, Dugger challenges the sufficiency of the evidence, arguing that there was no evidence that the substance was cocaine. As discussed above in Division 1, this argument does not preclude the revocation of Dugger's probation, in light of testimony by Officer Holder, Turner, and Dugger that the substance was crack cocaine.

Dugger also argues that the evidence was insufficient to prove that he was in possession of the substance. We have held that "[a] person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[7] "It is well settled law that the quality and quantum of evidence necessary for revocation of probation is not that demanded for conviction of crime."[8]

As stated earlier, Dugger admitted that Daniely showed him the crack cocaine before the police stopped them and that he knew that Daniely was looking to sell the drugs. Daniely, on the other hand, testified that the drugs were not his and that he knew nothing about them. "[I]ssues of credibility are for the trier of fact, not this Court."[9] Furthermore,

> [w]here immediate and exclusive possession of an automobile, locker room, or other premises is shown, the inference is authorized that the owner of such property is the owner of what is contained therein, and this inference has been referred to as a rebuttable presumption. However, as to automobiles, the rule does not apply where there is evidence in the case that the defendant has not been in possession of the vehicle for a period of time prior to the discovery of the contraband or that others have had access to it.[10]

---

[5] 245 Ga. App. 135 (537 SE2d 457) (2000).

[6] Id. at 136 (1).

[7] *Lee v. State*, 126 Ga. App. 38 (2) (189 SE2d 872) (1972).

[8] (Citation omitted.) *Adams v. State*, 158 Ga. App. 529 (1) (281 SE2d 250) (1981).

[9] (Citation omitted.) *Reece v. State*, 257 Ga. App. 137, 139 (1) (b) (570 SE2d 424) (2002).

[10] (Citations and punctuation omitted.) *Hughes v. State*, 215 Ga. App. 6, 8 (1) (449 SE2d 547) (1994); *Reed v. State*, 186 Ga. App. 539, 540 (367 SE2d 809) (1988).

Dugger did not offer any evidence that he was not in possession of the vehicle before the contraband was found. The cocaine was found on the passenger side of Dugger's car in plain view.[11] Thus, the preponderance of the evidence supported a finding that Dugger was, at the very least, in constructive possession of the cocaine.

3. Finally, Dugger argues that the court erred by finding that he violated his curfew and associated with disreputable characters. We disagree.

Though the videotape showed that Dugger was stopped at 6:51 p.m., Officer Holder testified that he arrested Dugger at approximately 9:00 p.m. and explained that the clock on the video recorder was two hours off because he was never able to set it correctly. "[T]he credibility of witnesses at a probation revocation hearing is for the [trial] court" to decide.[12] In light of Officer Holder's testimony, we cannot hold that the trial court erred in finding that Dugger had violated his curfew.

Condition 3 of Dugger's probation mandated that he avoid persons or places of disreputable or harmful character. Dugger admitted that under the terms of his probation, he knew that he should not have picked up Daniely. Thus, we find no error in the trial court's finding that Dugger violated Condition 3 of his probation.[13]

## Case No. A03A0059

In his appeal, Daniely challenges the sufficiency of the evidence, arguing that the state failed to prove the substance was cocaine or that he associated with a disreputable character.

Daniely relies on *Johnson v. State*[14] in support of his argument that the revocation should be reversed because the state failed to prove that the substance was cocaine. In *Johnson*, "[t]he State relied primarily on defendant's admission that '[t]he cocaine found at my house . . . was mine' [and we held that] [t]his evidence alone is not sufficient to authorize a finding that defendant is guilty, beyond a reasonable doubt, of the crime charged."[15]

This court and the Georgia Supreme Court, whose decisions are binding upon us, have often reaffirmed the legal maxim

---

[11] Compare *Hughes*, supra (conviction for trafficking in cocaine reversed where defendant's passenger had an equal opportunity to commit the crime without the defendant's knowledge).

[12] *Caldwell v. State*, 166 Ga. App. 657, 658 (305 SE2d 407) (1983).

[13] See *Dickey v. State*, 257 Ga. App. 190 (570 SE2d 634) (2002) (the trial court did not abuse its discretion when it revoked the probation of a defendant who knowingly violated a condition of his probation).

[14] 205 Ga. App. 760 (423 SE2d 702) (1992).

[15] (Citation omitted.) Id. at 761.

that the quantum of proof sufficient to justify a revocation of probation is less than that required to sustain conviction in the first instance. Thus, in such proceeding it is unnecessary that the evidence support the findings beyond a reasonable doubt.[16]

Here, both defendants acknowledged on the videotape that the substance was "dope." Officer Holder, Turner, and Dugger testified that the substance was crack cocaine. The substance was captured on a videotape, which was introduced as evidence. Thus, as we concluded in Division 2 of Case No. A03A0058, the trial court did not err when it found by a preponderance of the evidence that Daniely violated his probation by possessing cocaine.

Daniely admitted that he associated with a disreputable character in violation of his probation. He testified that "I didn't know to the fullest extent that I could be prosecuted by being around disreputable characters such as Marcell. I been growing up around him all my life. It's hard." Thus, the trial court's finding that the state proved by a preponderance of the evidence that Daniely violated his probation by associating with Dugger was not erroneous.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED APRIL 11, 2003.

*Virgil L. Brown & Associates, Virgil L. Brown, T. Robert Perkerson*, for appellant (case no. A03A0058).
*Worthington & Flournoy, Thomas M. Flournoy*, for appellant (case no. A03A0059).
*J. Gray Conger, District Attorney*, for appellee.

[16] (Citations omitted.) *Anderson v. State*, 170 Ga. App. 18, 19 (1) (316 SE2d 166) (1984).