**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 5, 2017

# In the Court of Appeals of Georgia

A17A0441. IN THE INTEREST OF W. B.

BRANCH, Judge.

Following an adjudicatory hearing in the Muscogee County Juvenile Court, the court found that W. B. had committed burglary in the first degree and had engaged in criminal gang activity. The juvenile court therefore adjudicated W. B. delinquent and placed him in restrictive custody for five years. W. B. now appeals, asserting that the evidence was insufficient to support a finding that he had engaged in criminal gang activity. We agree with W. B., and we therefore reverse the adjudication of delinquency for criminal gang activity.

"In reviewing an adjudication of delinquency, this court construes the evidence and all reasonable inferences therefrom 'in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable

doubt, that the juvenile committed the acts charged.'" *In the Interest of A. G.*, 317 Ga. App. 165, 165 (730 SE2d 187) (2012) (punctuation and footnote omitted). And in making that determination, "we neither weigh the evidence nor determine witness credibility." Id. (footnote omitted).

Viewed in the light most favorable to the adjudication of delinquency, the record shows that on January 19, 2016, W. B., together with his two juvenile co-defendants and an adult, burglarized a home in Columbus. In February 2016, the State filed a delinquency petition alleging that W. B. had committed burglary in the first degree, and it subsequently amended that petition to allege that W. B. had engaged both in the burglary and in criminal gang activity on January 19. W. B.'s case was heard together with the delinquency cases of his two juvenile co-defendants, J. W. and M. J. At the outset of the hearing, counsel for each of the three defendants announced that his or her client was admitting to the burglary charge but was

2

contesting the charge of criminal gang activity. The State thereafter declined to present any evidence regarding the burglary or the police investigation of that crime.[1]

In support of the charge of criminal gang activity, the State presented three witnesses: Corporal Michael O'Keefe, a patrol officer with the Columbus Police Department; Chris Samra, a special agent with the Georgia Department of Corrections, who was qualified as an expert in gang identification; and Marcus Dubose, Director of Student Services for the Muscogee County Schools.

O'Keefe testified that he had been a patrol officer for 10 years, and during that time, he had received approximately 400 hours of training on criminal gangs and how to identify them. Additionally, O'Keefe stated that the area in which he patrols and

---

[1] We note that some information regarding the burglary and the police investigation of the crime is included in the appellate record, as it appears the police reports were filed with the court in conjunction with the filing of the delinquency petitions. And in its appellate brief, the State cites these documents to support its argument that the evidence sufficed to prove that W. B. had engaged in criminal gang activity. Unfortunately, however, the State did not introduce any of those documents or testimony regarding the same into evidence at the delinquency hearing. Accordingly, we cannot consider them in determining whether the evidence sufficed to prove that W. B. had engaged in criminal gang activity. See, e.g., *White v. State*, 310 Ga. App. 386, 388 (2) (714 SE2d 31) (2011) (when this Court considers the sufficiency of the evidence, "we must ask whether any rational [trier of fact] could find proof of guilt beyond a reasonable doubt *in the evidence adduced at trial*, viewing that evidence in the light most favorable to the verdict") (citation and emphasis supplied).

3

in which the burglary occurred was known for "heavy gang activity." The predominant gang in the area was the Winston Road Squad gang and in O'Keefe's experience, that gang was involved in a number of illegal activities, including burglary rings, narcotics, prostitution, and the illegal sale of firearms. O'Keefe testified that he had taken the report of the burglary and at that time, the homeowner's son reported having received text messages regarding people in possession of the stolen property. O'Keefe did not testify, however, as to the alleged content of those messages or whether the messages referenced the Winston Road Squad gang. According to O'Keefe, the messages were sent by an individual known only as "Squad Boss," but O'Keefe was not personally familiar with that individual. Although O'Keefe believed that Squad Boss was "suspected of being involved in gang activity," O'Keefe did not identify either the gang that police believed Squad Boss belonged to or the gang activity in which Squad Boss was suspected of participating.

With respect to the three defendants, O'Keefe testified that he was familiar with all three juveniles from his time patrolling their neighborhood and that he previously arrested a number of their known associates. The officer, however, did not identify any of those associates or testify as to whether they were members of the

4

Winston Road Squad gang. After police identified the three juveniles as suspects in the burglary, O'Keefe looked at each juvenile's Facebook page to see if he could find any evidence of gang activity. According to O'Keefe, such evidence would include pictures featuring the juveniles dressed in gang colors or other types of clothing typically worn by a specific gang; the juveniles "throwing" or making known gang signs with their hands; and the juveniles displaying firearms. On W. B.'s Facebook page, O'Keefe observed W. B. in photographs "holding up gang signs with his hands, wearing colors that [were] known to be worn by gang members," and displaying firearms.[2] Additionally, O'Keefe observed that W. B. had posted pictures of himself "with other individuals who have been arrested and are suspected of . . . criminal gang activity," including one picture that showed Squad Boss. After viewing each defendant's individual Facebook accounts, police charged them with criminal gang activity.

Samra, who was qualified as an expert in gang identification, testified that the Winston Road Squad gang was a street gang that functioned as a subset of a larger gang, the Gangster Disciples. The Winston Road Squad gang was known to engage

---

[2] O'Keefe did not testify what the signs were, what the colors were, or with which gang or gangs the signs and the colors were associated.

in assaults, burglaries and armed robberies, and as a general rule, any proceeds from these activities would be used to fund the gang. Additionally, a portion of any money received by the Winston Road Squad gang would be forwarded to the Gangster Disciples. Samra further testified as to the difference between gang associates and gang members, explaining that associates were not "full-fledged" members. Instead, associates were people who "hung out" with gang members and who might provide some assistance to the gang. Samra also testified that the Winston Road Squad gang was a "hybrid gang," and explained that hybrid gangs operate at a very local level and might include members of one or more larger groups. According to Samra, hybrid gangs are "kind of like the [T]riple A version" of gangs – i.e., hybrid gangs are where members "learn how to do [this] stuff and then they move up into a more centralized core until they work their way up [in the main gang] like a military structure."

With respect to social media, Samra testified that gangs use social media both as a recruiting tool and to establish what individual gang members have done as they work their way up in the gang hierarchy. Samra explained that hybrid gangs often identify members on social media by having all members use the same middle name or initial. In this case, Samra had examined the Facebook accounts for W. B. and his two co-defendants and he noted that all three used the initials "AG" in place of a

middle name. The State introduced into evidence printouts from the Facebook pages of W. B. and his co-defendants, and on their pages, all three juveniles displayed emojis that included guns, bombs, and dollar signs. Additionally, W. B. posted photographs of himself making signs with his hands that Samra said were gang signs, but Samra offered no testimony as to what gang would be associated with those signs. Samra noted that in some pictures, W. B. was making a "throwdown" sign, which was used by gang members to show that the member had weapons. Additionally, W. B. posted pictures of himself pointing a handgun at the camera, which Samra explained would be typical of gang members. Samra also stated that in some of the pictures, W. B. was dressed either in camouflage or was wearing a red hat, and Samra apparently saw that as a sign of gang membership, as he had previously testified that the wearing of certain colors would indicate gang affiliation. The State offered no testimony or other evidence, however, to show that red and camouflage were the colors of either the Winston Road Squad gang or the Gangster Disciples. Finally, Samra testified that the Facebook post showed W. B. and one of his codefendants displaying tattoos of what could be their nicknames, and he observed that gang members often went by nicknames.

Dubose testified that in his capacity as Director of Student Services for Muscogee County, he served as a disciplinary hearing officer and he maintained the disciplinary records for Muscogee County students. Dubose stated that Rule 14 of the Muscogee County School District Behavior Code prohibits gang activity on school property.[3] In August 2015, approximately five months before the burglary at issue, W. B. and one of his co-defendants assaulted a student at a Muscogee County middle school, and during the subsequent disciplinary proceedings, each admitted to violating Rule 14's prohibition on gang activity.

Based on the foregoing evidence, the juvenile court found that W. B. had engaged in criminal gang activity. W. B. now appeals that decision.

---

[3] The State introduced a copy of Rule 14 into evidence, and the rule provides: Gang activity is prohibited. Gangs are clubs, groups, or organizations of limited membership, which are known to advocate, practice, engage or participate in unlawful acts such as intimidation, violence, or destruction to property. Gangs are not permitted on school premises or in school facilities. Gang members are prohibited from conducting any activities, meetings, or gatherings on or about school facilities, premises, or property at any time.

Georgia's Street Gang and Terrorism Prevention Act, OCGA § 16-15-1, et seq., makes it "unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of" certain enumerated criminal offenses, including burglary. See OCGA § 16-15-4 (a); OCGA § 16-15-3 (1) (A); OCGA § 16-14-3 (5) (A) (vii). Here, the delinquency petition alleged that W. B. had violated this statute by committing the burglary while "associated with the 'Winston Road Squad' gang." Thus, to prove that W. B. had violated the Street Gang Act as charged, the State was required to show that W. B. was associated with the Winston Road Squad gang; that the Winston Road Squad gang was a criminal street gang; that W. B. committed a predicate act of criminal gang activity, namely the burglary with which he was charged; and that the commission of the burglary "was intended to further the interests of [the Winston Road Squad gang]." *Jones v. State*, 292 Ga. 656, 659 (1) (b) (740 SE2d 590) (2013); *Rodriguez v. State*, 284 Ga. 803, 806-807 (1) (671 SE2d 497) (2009). On appeal, W. B. asserts that the State failed to prove either that he was associated with the Winston Road Squad gang, or that the burglary was committed to further the interests of that organization. Assuming for purposes of this appeal that the State's evidence sufficed to prove that W. B. was associated with the Winston Road Squad gang and that the

9

Winston Road Squad gang was a criminal street gang,[4] we find that the evidence was insufficient to show that W. B. committed the burglary to further the interests of the gang.[5]

To sustain W. B.'s conviction under OCGA § 16-15-4 (a), the State was required to prove "something more than the mere commission of a crime by gang members." *Randolph v. State*, 334 Ga. App. 475, 481 (4) (780 SE2d 19) (2015).

---

[4] See OCGA § 16-15-3 (2) (providing that the existence of a "criminal street gang" "may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics, including, but not limited to, common activities, customs, or behaviors"); *Zamudio v. State*, 332 Ga. App. 37, 41 (2) (a) (771 SE2d 733) (2015) (evidence that defendant had grown up in gang territory, that officer had seen numerous photographs of defendant with other gang members in front of a sign identifying a gang neighborhood while making the sign of that gang, and that defendant participated in a fight on behalf of the gang sufficed to prove defendant was a member of that gang). Compare *Jones*, 292 Ga. at 659 (1) (b) (reversing defendant's conviction for criminal gang activity because "although officers testified at trial that members of the Southside Bloods often display certain symbols and colors, no evidence was presented that [defendant] or any of his accomplices displayed those symbols or colors, either on the day of the [crime] or at any other time"); *In the Interest of A. G.*, 317 Ga. App. at 166 (evidence that three juvenile defendants wore bandannas, which an officer testified was indicative of gang membership, and that a fourth juvenile kept a notebook "written in a style associated with gangs" was "insufficient to prove beyond a reasonable doubt that the four juveniles were members of a criminal street gang") (footnote omitted).

[5] As noted above, W. B. admitted that he had committed the first degree burglary with which he was charged.

10

Instead, the State had to prove the existence of a nexus between the burglary "and an intent to further street gang activity." *Rodriguez*, 284 Ga. at 807 (1) (punctuation omitted). Put another way, to prove a violation of OCGA § 16-15-4 (a), it is "essential" that the State demonstrate "that the commission of the predicate act was intended to further the interests of the gang." *Morris v. State*, 340 Ga. App. 295, 298 (1) (797 SE2d 207) (2017) (punctuation and footnote omitted). This requirement is satisfied by evidence that the gang received the proceeds from or otherwise benefited from the commission of a particular crime. Evidence showing that a crime was done in retaliation for some act or insult committed against the gang or its members will also serve to show that the crime furthered the gang's interests. See *In the Interest of L. P.*, 324 Ga. App. 78, 84 (3) (749 SE2d 389) (2013); *Morey v. State*, 312 Ga. App. 678, 686 (2) (b) (719 SE2d 504) (2011). Additionally, Georgia courts have previously held that evidence showing that the crime was committed in a highly visible manner so as to allow witnesses and victims "to [discover] that a particular gang committed the crime," *Alston v. State*, 329 Ga. App. 44, 47 (1) (763 SE2d 504) (2014), or evidence that the purpose of the crime was to establish, reinforce, or enhance the gang's reputation satisfies the nexus requirement. Id. See also *Randolph*, 334 Ga. App. at 482 (4). This requirement is also satisfied where the State shows that gang

11

members referenced a particular incident on social media so as to establish that the gang was responsible for a specific crime, either for the purpose of enhancing the gang's reputation or intimidating others. See *Morris*, 340 Ga. App. at 300 (1). And evidence, including social media posts, that a specific gang member perpetrated the crimes so as to promote himself within the gang hierarchy would also suffice to prove the required nexus. See *In the Interest of X. W.*, 301 Ga. App. 625, 629-630 (3) (688 SE2d 646) (2009).

Here, the State presented no evidence from which the juvenile court could conclude that W. B. committed the burglary to further the interests of the Winston Road Squad gang. Although the State presented evidence showing that W. B. and his co-defendants had posted pictures and other items on Facebook which indicated they held membership in a gang, there was no evidence showing that either W. B., his codefendants, or other members of the Winston Road Squad gang had posted anything about the burglary on Facebook. Thus, the social media evidence gave no indication that W. B. or his co-defendants had committed the burglary in an effort to promote themselves within the gang or to otherwise enhance the gang's reputation. Nor did the State present any evidence showing that the victims of the burglary or any witnesses were aware that the crime was committed by members of the Winston Road

12

Squad gang. Additionally, there was no evidence that the items stolen by the juveniles during the burglary were for anything other than their personal use.[6] Accordingly, there was no evidence that the Winston Road Squad gang had benefitted from the burglary, either financially or otherwise.

Given that the State failed to prove that W. B. committed the burglary to further the interests of the Winston Road Squad gang, we reverse the juvenile court's finding that W. B. engaged in criminal street gang activity. See *Jones*, 292 Ga. at 660 (1) (b).

*Judgment reversed. McFadden, P. J., and Bethel, J., concur.*

---

[6] During the evidentiary portion of the hearing, the State presented no evidence of what happened to the property that was stolen during the burglary. Statements made during the sentencing phase of the hearing, however, indicated that at least some of that property was returned to the homeowner.