306 Ga. 423
FINAL COPY

S19A0611. GUDE v. THE STATE.

BETHEL, Justice.

At a February 2013 trial, a jury found Frederick Lee Gude guilty of malice murder, felony murder predicated on aggravated assault, aggravated assault, and theft by taking in connection with the stabbing death of Jacquelyn Nash.[1] He appeals, contending that

---

[1] The crimes were discovered on January 21, 2004. On April 6, 2004, a Fulton County grand jury indicted Gude for malice murder; felony murder predicated on the aggravated assault of Nash; felony murder predicated on the armed robbery of Nash; aggravated assault with a deadly weapon of Nash; armed robbery; theft by taking of Nash's vehicle; kidnapping with bodily injury; and possession of a knife during the commission of a felony. The charge of possession of a knife during the commission of a felony was nolle prossed before trial.

In 2010, the State moved the trial judge, Judge Marvin Arrington, to recuse himself. Judge Kimberly M. Esmond Adams was appointed to hear the State's motion to recuse Judge Arrington, and, subsequently, Gude moved Judge Adams to recuse herself. Without referring the matter to another judge, Judge Adams denied Gude's motion. Gude appealed that denial to this Court, and we affirmed. See *Gude v. State*, 289 Ga. 46 (709 SE2d 206) (2011).

At a February 2013 trial, a jury found Gude guilty of malice murder, felony murder predicated on aggravated assault, aggravated assault, and theft by taking. Gude was found not guilty of the remaining charges. The trial court sentenced Gude to serve life in prison without parole for malice murder and ten years consecutive for theft by taking. The trial court merged the conviction for aggravated assault with the conviction for malice murder. Although the

the trial court erred in admitting a tape-recorded voicemail message into evidence and that he received ineffective assistance of counsel. For the reasons stated below, we affirm.

1. Viewed in a light most favorable to the jury's verdict, the evidence presented at trial showed that, on January 21, 2004, Jacquelyn Nash was found dead in the home of her elderly aunt, Nannell Collins, with whom she lived. An autopsy revealed that Nash had been stabbed approximately 40 times. Nash's body was discovered by her son, who spoke with police and named Gude as a possible person of interest.[2] Nash's son also informed police that Nash's vehicle, a black 1996 Ford Explorer, was missing. While investigating the crime scene, police spoke to one of Nash's

trial court purported to "merge" the felony murder count into the malice murder count, the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993).

Gude filed a motion for new trial on February 19, 2013, and he amended that motion on August 1, 2017. Gude amended the motion a second time on August 16, 2017. The trial court denied the motion (as amended) on December 8, 2017. Gude filed a notice of appeal to this Court, and this case was docketed to the April 2019 term and submitted for a decision on the briefs.

[2] At trial, Nash's son testified that Gude and Nash dated in the early 1980s and that Gude was abusive toward Nash.

neighbors,[3] who told police that, on the morning of January 20, he saw Gude leaving Nash's home driving much faster than he should have been driving. That same day, Lila Hertz, Nash's employer, called Nash's home when Nash failed to show up for work. A man answered the phone and informed Hertz that Nash had a doctor's appointment and would be late for work.

In the evening on January 21, detectives were dispatched to the home of Gude's sister and were instructed to identify a vehicle parked at that location, a black 1996 Ford Explorer, and to surveil the residence. About 20 minutes after detectives arrived at the location, Gude exited the home and got into the Explorer. Gude left the residence in the Explorer, and the detectives followed him in their unmarked vehicle. After some time and without police initiating a traffic stop, Gude suddenly stopped the vehicle, got out, and put his hands in the air. He was taken into custody, and, upon searching him, police recovered keys to Nash's home.

At trial, the State presented the testimony of Tayrn Gude

---

[3] The neighbor was deceased at the time of trial.

("Tayrn"), Gude's daughter who lived in Maryland. Tayrn testified that, on January 20, she returned home from work to find a voicemail message from Gude on her answering machine. According to Tayrn, in the voicemail Gude confessed to killing Nash because he had given Nash $500[4] for safekeeping but when he went to her home to retrieve the money he found that she no longer had the money. After listening to the voicemail, Tayrn made numerous attempts to contact Gude. She finally reached him the next day, January 21, at the home of his sister.[5] When Tayrn asked Gude what happened to Nash, he gave several conflicting stories, insisting that he had taken Nash to a hospital, although he could not recall which hospital, and alternatively claiming that he had called an ambulance to pick up Nash from her home. Gude informed Tayrn that he drank radiator fluid some time that day because he did not want to go back to prison, and Gude's sister told Tayrn that Gude

---

[4] Tayrn testified that she gave Gude the $500, and, at trial, the State entered into evidence a receipt for a $500 money order purchased by Tayrn and made out to Gude.

[5] Gude's sister was present for the phone conversations between Tayrn and Gude, but she was deceased at the time of trial.

was in the bathroom vomiting as a result of drinking the radiator fluid. Gude also told Tayrn he was planning to "try to go towards the border," which he explained meant Florida. He asked Tayrn to send him money to aid him during his flight. Tayrn reported her communications with Gude to the police that evening.

The following stipulations agreed upon by Gude and the State were entered into the record at trial:

> On January 21, 2004, the following pieces of evidence were collected from [Nash's residence] and sent to the Georgia Bureau of Investigations for testing[:] One ice pick, 13 beer cans, one cigarette, and four cigarette butts. Additionally, Frederick Gude's DNA was provided to the [GBI]. The results of the testing on the ice pick did not reveal the presence of blood. The results of testing of the beer cans failed to reveal the presence [of] amylase, an enzymatic constituent of saliva. The results of the testing on the cigarette butts revealed the presence of amylase . . . on one cigarette butt label[ed] in "paper towel." Further testing revealed that the DNA found in the amylase on the cigarette butt is that of Frederick Gude.

Testimony at trial established that neither Nash nor Collins drank alcohol or smoked.

Although Gude does not challenge the legal sufficiency of the evidence supporting his convictions, adhering to this Court's

practice in murder cases, we have reviewed the record and conclude that the evidence stated above was sufficient to authorize a rational jury to find Gude guilty beyond a reasonable doubt on each of the counts of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Gude argues that the trial court erred by admitting the tape-recorded voicemail message into evidence. In Gude's view, the admission of the message violated the best evidence rule. We review the trial court's decision for an abuse of discretion. See *Evans v. State*, 288 Ga. 571, 573 (3) (707 SE2d 353) (2011).

Before trial, Gude moved to exclude the tape-recorded voicemail message he left on Tayrn's answering machine, arguing that the recording was unreliable "as evidenced by the fact that two court reporters and one police detective [had] listened to the tape and [had] heard three substantially different versions of what was said." Before admitting the copies of the voicemail message, the trial court heard testimony from Tayrn and Detective Stephen Balkcom,

6

the lead investigator on the case, regarding the availability of the original message on Tayrn's answering machine and the process by which Detective Balkcom obtained copies of that message.

Detective Balkcom testified that, on January 23, he traveled to Tayrn's home in Maryland. There, he listened to the original voicemail message left on Tayrn's answering machine and a copy of the message that Tayrn had made on a cassette tape. Using a microcassette recorder, he made a second copy from the cassette copy Tayrn made. The copy made by Detective Balkcom was admitted into evidence at trial. Detective Balkcom testified that the answering machine was one of the first digital machines on the market and that the machine did not have a tape on which to record voicemail messages. Further, Balkcom explained that he did not take possession of the machine because he did not want to unplug it for fear that the machine would erase the voicemail message.

Tayrn testified that she made her own recording of the voicemail message on a cassette tape and that, although the cassette was "presumably" at her home, it could not be located. When

7

questioned as to the availability of the original answering machine, she testified that the machine had been discarded because it was no longer functional and "just died." Detective Balkcom and Tayrn both testified that the copy of the voicemail message admitted at trial sounded the same and contained the same substance as the original voicemail message.

The trial court denied Gude's motion and admitted the voicemail message over his objection. Before the voicemail message was published, the court instructed the jury as follows:

> The substance of what is on the recordings is a matter for you to determine. It is up to you once you have heard it to make your independent decision about what it is that its contents are. Insofar as it purports to be a conversation or a tape of a message, that is substantively what it is, a tape of a message. Its substance is a matter for your determination.

On appeal, Gude argues that the trial court's admission of the copy of the voicemail message violated OCGA § 24-10-1002,[6] known colloquially as "the best evidence rule." But Gude's argument makes

---

[6] "To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required."

no reference to OCGA § 24-10-1003, which provides that "[a] duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original." Gude has not called into question the authenticity of the voicemail message, nor does he argue that the use of the duplicate was unfair. Thus, the duplicate was admissible to the same extent as the original recording.

To the extent Gude takes issue with the clarity and quality of the duplicate, he has not shown or even argued that the duplicate was of any different quality than the original, so those complaints go to the weight of the evidence, not its admissibility. See *Greater Kansas City Laborers Pension Fund v. Thummel*, 738 F2d 926, 928 (8th Cir. 1984) (explaining that "obscured, covered, and obliterated" signature on carbon copy of contract did not preclude admissibility and instead "would go to the weight attached to the document"). This enumeration is without merit.

3. Gude argues that he received ineffective assistance at trial

9

based on (a) trial counsel's failure to move to suppress statements Gude made contemporaneously with his suicide attempt, and (b) trial counsel's failure to hire an expert witness to explain how Gude's suicidal ideations could affect his state of mind when he made those statements.

To prevail on a claim of ineffective assistance, Gude must demonstrate both that his trial counsel's performance was professionally deficient and that, but for that deficiency, a reasonable probability exists that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "We need not review both elements of this test if the appellant fails to prove one of them." *Crouch v. State*, 305 Ga. 391, 397 (3) (825 SE2d 199) (2019). We address each of Gude's claims in turn.

(a) Turning to his first claim of ineffective assistance, Gude argues that his trial counsel should have moved to suppress as involuntary statements that Gude made to Tayrn in a phone conversation after he consumed radiator fluid. Gude contends that,

had trial counsel so moved, it "would have caused the [trial court] concern that the statement made was an involuntary statement affected by a mental health condition, and therefore since [Gude] may not know what he was saying, the statement would have been excluded." Gude's argument, however inartfully crafted, appears to be that, because he ingested radiator fluid and was allegedly suicidal at the time he made the statements, they were involuntary. In support of this contention, Gude points to this Court's decision in *Nelms v. State*, wherein we stated that "[a] confession made when the defendant is insane and incompetent is not free and voluntary and is not admissible." 255 Ga. 473, 474 (1) (340 SE2d 1) (1986) (citing *Blackburn v. Alabama*, 361 U. S. 199 (80 SCt 274, 4 LE2d 242) (1960)). While this is true, Gude has ignored the fact that the confession in *Nelms* was given to police while the defendant was in custody. *Nelms* is thus consistent with the proposition, which we have previously discussed, that "coercive police activity is a necessary predicate to a finding that a confession is involuntary within the meaning of the due process clause of the Fourteenth

11

Amendment." *Oubre v. Woldemichael*, 301 Ga. 299, 307 (2) (b) (800 SE2d 518) (2017). See also *Colorado v. Connelly*, 479 U. S. 157, 164, 165 (II) (107 SCt 515, 93 LE2d 473) (1986) ("[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry. . . . Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." (footnote omitted)).

Here, the statement at issue was made during the phone conversation with Gude's daughter. Because the police were not involved in obtaining this statement from Gude nor was the statement made to law enforcement or anyone acting on the State's behalf, Gude's statement cannot be described as involuntary within the meaning of the due process clause of the Fourteenth Amendment. Therefore, any motion to suppress that counsel could have raised would have been meritless, and failure to raise a meritless objection cannot support a finding of ineffective

assistance. See *Hampton v. State*, 282 Ga. 490, 492 (2) (a) (651 SE2d 698) (2007) ("Trial counsel's performance was not deficient merely because he chose to abstain from raising meritless objections, and his failure to raise meritless objections was, by definition, non-prejudicial.").

(b) Gude also contends that his trial counsel was ineffective in failing to secure an expert witness to testify regarding a purported link between Gude's suicidal ideations and the statements he made to Tayrn when they spoke on January 21. In support of this enumeration, Gude offered at the hearing on his motion for new trial the testimony of Racquel McGee, the social services coordinator at the office of the Fulton County Public Defender. McGee has a master's degree in forensic psychology and was qualified as an expert in that field by the trial court. McGee testified that she had neither interviewed Gude nor reviewed his records because she "want[ed] to remain objective." McGee further testified in generalities regarding what she termed inappropriate guilt, as well as some of the symptoms of depression and suicidal ideation. McGee

opined that a person's statement made concurrently with a suicide attempt "can provide knowledge to the fact that [the person's] thought process could be distorted."

This testimony, in addition to its general nature, amounted to nothing more than speculation as to Gude's mental condition at the time he spoke to his daughter. Gude "did not present any evidence that [he] had ever been evaluated by an expert or that a psychologist reviewed the record and formed an opinion" as to his state of mind at the time he made the statements at issue, "and speculation about results if [he] had [been evaluated] is not enough." *Mims v. State*, 304 Ga. 851, 856 (2) (a) (823 SE2d 325) (2019). He therefore "has not shown that this evidence would have been favorable to his defense and that a reasonable probability exists that the result at trial would have been different." (Citation and punctuation omitted.) *Coley v. State*, 305 Ga. 658, 665 (6) (b) (827 SE2d 241) (2019). Accordingly, this claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Fulton Superior Court. Before Judge Russell.
*Lauren B. Shubow*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney*

*General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.