**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 9, 2024**

# In the Court of Appeals of Georgia

A24A0596. ALEXANDER v. THE STATE.

A24A0597. ALEXANDER v. THE STATE.

HODGES, Judge.

In two related cases, the Superior Court of Hart County revoked Laterrell Marique Alexander's probation. We granted his applications for discretionary review. For the reasons set forth below, we affirm the trial court's finding that Alexander committed the new offenses of trafficking methamphetamine and possessing drug-related objects. Further, as outlined below, Alexander has not challenged the trial court's finding that he committed the new offense of illegally using a communications facility. The trial court's determination that Alexander also committed the new offenses of engaging in a conspiracy to possess a Schedule II controlled substance with intent to distribute and violating the Street Gang Terrorism and Prevention Act,

however, are not supported by a preponderance of the evidence and must be reversed. Accordingly, we vacate the trial court's order and remand this case with direction that the trial court consider, in its discretion, what penalty to impose based upon the new offenses that remain.

Pursuant to OCGA § 42-8-34.1 (b), a court may revoke any part of any probated or suspended sentence if the defendant admits the violation as alleged or if the evidence produced at the revocation hearing establishes the violation by a preponderance of the evidence.

> This Court will not interfere with a revocation unless there has been a manifest abuse of discretion on the part of the trial court. Thus, we will affirm a probation revocation judgment if the record includes some competent evidence to show that the defendant violated the terms of his probation in the specific manner charged. This Court reviews questions of law, however, de novo.

(Citation omitted.) *Kellum v. State*, 367 Ga. App. 742 (888 SE2d 315) (2023). "It is well settled law that the quality and quantum of evidence necessary for revocation of probation is not that demanded for conviction of a crime." (Citation and punctuation omitted.) *Dugger v. State*, 260 Ga. App. 843, 846 (2) (581 SE2d 655) (2003). The trial court is the factfinder and, as such, bears the duty of weighing the evidence,

determining the credibility of witnesses, resolving conflicts in the evidence, and deciding whether to accept or reject evidence that is introduced. See *Gaddis v. State*, 310 Ga. App. 189, 190 (1) (712 SE2d 599) (2011).

In 2016, Alexander pled guilty in two cases to two counts of possession of cocaine with intent to distribute. He received consecutive sentences totaling 20 years, with the first five years to be served in confinement. As conditions of probation, he was, inter alia, subject to a Fourth Amendment waiver, prohibited from using or possessing narcotics or dangerous drugs that were not lawfully prescribed, prohibited from associating with anyone who uses or possesses illegal drugs, and prohibited from committing any new criminal offenses. In 2023, the State, through the Department of Community Services, petitioned to modify or revoke Alexander's probation, alleging he had committed new criminal offenses: (1) trafficking methamphetamine and possessing drug-related objects; (2) violating the Street Gang Terrorism and Prevention Act; (3) engaging in a conspiracy to possess a Schedule II controlled substance with intent to distribute; and (4) illegally using a communication facility.

Following an evidentiary hearing, the trial court revoked the balance of Alexander's probation, finding by a preponderance of the evidence that he violated the

terms and conditions of his probation in both lower court cases by committing the new offenses outlined above. Alexander's discretionary appeals are consolidated for our review.

1. Alexander argues that the trial court erred in admitting, over objection, State's Exhibit 1, which consisted of line sheets of text messages and telephone calls between him and Jaquavious Waller, the self-proclaimed Hart County leader of the Sex, Money, Murder gang. As will be discussed more fully below, Alexander raised a best evidence objection at the hearing, arguing that the best evidence was "the recordings themselves." We turn first to this enumeration, because it influences our analysis of the trial court's ruling on several of the new crimes at issue in Alexander's probation revocation.[1]

We review the trial court's admission of evidence for an abuse of discretion. *Gude v. State*, 306 Ga. 423, 426 (2) (831 SE2d 807) (2019). "An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling

---

[1] "For convenience of discussion, we have taken the enumerated errors out of the order in which [Alexander] has listed them . . . ." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

misstates or misapplies the relevant law." (Citation and punctuation omitted.) *Glasper v. State*, 364 Ga. App. 608, 610 (876 SE2d 11) (2022).

The record shows that the texts and calls were intercepted pursuant to two Georgia Bureau of Investigation ("GBI") T-3 wiretaps, the longest of which was active for 47 days. Through these wiretaps, law enforcement was investigating various crimes believed to be gang-related, including a murder, a stabbing, and a shooting involving the Sex, Money, Murder gang and other gangs. At the hearing, GBI Special Agent Katie Walker testified that she participated in the wiretap every day and had firsthand knowledge of every phone call and text message between Waller and Alexander. She testified that the pertinent text messages and phone calls were reduced to written form in 104 line sheets.

The State tendered the line sheets into evidence at trial over various objections.[2] After Walker testified that the GBI had original recordings of the phone calls, Alexander raised a best evidence objection. The trial court admitted the line sheets over these objections.

_____

[2] Alexander raised hearsay and Confrontation Clause objections related to Waller's communications, but those objections were overruled. Alexander does not enumerate those particular rulings as error on appeal, so we do not address them further.

Walker testified that the phone call narratives recorded in line sheets typically were created by the agent — in this case, herself — listening to the call and typing in pertinent information in real time, either as a non-verbatim summary or as a verbatim transcription. Walker testified, by contrast, that the text messages were recorded verbatim in the line sheets via an app and could not be edited or summarized, appearing "exactly" as typed by the original senders.

OCGA § 24-10-1002 provides that "[t]o prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required." OCGA § 24-10-1003 provides, however, that "[a] duplicate shall be admissible to the same extent as the original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original."

(a) *The text messages*. The texts relate to a transfer of Percocet pills between Alexander and Waller. As Walker testified, an app copied the text messages verbatim, "exactly" as they were typed by the original senders.

6

The text messages between Waller and Alexander, in pertinent part, say: "Perks in[;]"[3] "6 house I need 2 of dem things[;]" "Still got sum perks?" "Hell yeah[;]" "I'm finna come scoop[;]" "Bet[;]" "Finna pull up[;]" "Give me a few twin[4] this Lil bitch bout to pull up[;]" and "Aight[.]" Walker testified, based on her training and experience, that this exchange indicated Alexander had Percocet pills which Waller wanted and that Waller was on his way to pick up the pills. She also testified that these messages indicated "that Mr. Alexander sold Mr. Waller Percocet pills for personal use."

As an initial matter, the best evidence objection Alexander raised in the trial court referred to the "recordings themselves," a clear reference, both in nomenclature and within the context of the objection itself, to the phone calls rather than the text messages. Further, although Alexander's appellate brief nominally enumerates as error the admission of the text messages and provides record citations to three of them, he presents no real legal argument specific to the text messages and

---

[3] Alexander admits in judicio in his appellate brief that this reference is to "Percocets[,]" and Walker testified that the slang term "percs" was a reference to Percocet.

[4] Alexander and Waller referred to each other as "twin" frequently in their communications.

their admissibility or lack thereof. Conclusory statements are not the type of argument contemplated by our appellate rules; a sufficient argument is, at minimum, a discussion of the appropriate law as applied to the specific, relevant facts. See *Bowman v. State*, 358 Ga. App. 612, 615 (2) (856 SE2d 11) (2021). Further, Alexander fails to address, and cites to nothing in the record indicating, whether the original text messages were available below and whether he challenged the authenticity or fairness of the admission of the text messages. See OCGA § 24-10-1004; see generally *Gude*, 306 Ga. at 426-427 (2) (finding that a copy of a copy of a voicemail message was properly admitted under OCGA § 24-10-1003 where defendant "has not called into question the authenticity of the voicemail message, nor does he argue that the use of the duplicate was unfair"). It is well settled that this Court will not cull the record on behalf of any party in search of instances of error. *Luong v. Tran*, 280 Ga. App. 15, 16 (1) (633 SE2d 797) (2006). As a result, we find that this portion of Alexander's enumeration of error has been abandoned.

(b) *The phone calls*. Alexander's appellate brief provides citations to seven records of phone calls between him and Waller. Three of the calls were

"summarized" in the line sheets, one was "transcribed," and the rest were identified as having been "reviewed."

OCGA § 24-10-1004 provides, inter alia, that an original recording is not required and other evidence of the recording's contents are admissible if all originals have been lost or destroyed, so long as the proponent did not lose or destroy them in bad faith; if no original is available by judicial process or procedure; or if the recording is "not closely related to a controlling issue." The phone calls primarily address the purchase and sale of a small number of Percocet pills between Waller and Alexander, which Alexander argues relate to a controlling issue — the trial court's determination that he engaged in a conspiracy to possess and distribute Schedule II controlled substances. As noted above, Walker testified that the original phone call recordings were available, and, thus, the State made no showing that the original recordings were unavailable or inaccessible pursuant to OCGA § 24-10-1004. Compare *United States v. Ross*, 33 F3d 1507, 1513-1514 (II) (A) (11th Cir. 1994) (holding transcripts admissible under best evidence rule where audiotape recordings on which they were based had been destroyed through no fault of prosecution). Nor did the State argue, pursuant to OCGA § 24-10-1006, that the line sheets were not closely related to a controlling

9

issue, or that the summaries were necessary because the original audio recordings, covering 47 days, were voluminous. See generally *White v. Dilworth*, 178 Ga. App. 226, 226-227 (2) (342 SE2d 709) (1986).

Absent the proper showings, as outlined above, necessary to admit these line sheets in lieu of the original recordings, the trial court abused its discretion by admitting them over Alexander's best evidence rule objection. See generally *Glasper,* 364 Ga. App. at 610-611 (finding best evidence rule violation where law enforcement officer testified to the content of a security video recording, which was not admitted into evidence, without any showing that the recording was unavailable); see also *Carpenter v. Parsons*, 186 Ga. App. 3, 5 (3) (366 SE2d 367) (1988) (finding, under prior version of Evidence Code, that because appellant did not introduce recordings of telephone conversations and failed to establish a foundation for the introduction of transcripts as secondary evidence, they were properly excluded.).

2. Alexander argues that the State failed to show by a preponderance of the evidence that he violated the Street Gang Terrorism and Prevention Act. He contends the State failed to show by a preponderance of the evidence a nexus between his activities and gang activity, and that mere participation in an illegal activity with a gang

member is insufficient absent a showing that this participation furthered the gang's interests. We agree.

The Georgia Street Gang Terrorism and Prevention Act prohibits a person associated with a criminal street gang from participating in criminal street gang activity through the commission of a number of predicate crimes. See OCGA § 16–15–4 (a).

> "Criminal gang activity[]" . . . is defined as "the commission, attempted commission, conspiracy to commit, or solicitation, coercion, or intimidation of another person to commit" any of a number of offenses, including "racketeering activity." OCGA § 16–15–3 (1) (A). "Racketeering activity" includes violations of the Georgia Controlled Substances Act. OCGA § 16–14–3 (5) (A) (xxxiv). It is not enough, however, for the state simply to show that the defendant and other gang members committed a criminal act; rather, there must be some nexus between the act and an intent to further street gang activity.

(Citations and punctuation omitted.) *Randolph v. State*, 334 Ga. App. 475, 480-481 (4) (780 SE2d 19) (2015).

The State argues that it presented evidence of 104 phone or text message contacts between Alexander and Waller during the 47-day wiretap time-period. Given

our finding in Division 1 that the trial court erred in admitting the audio recordings, however, we look only to the text messages and other admissible record evidence to determine whether the State showed the requisite nexus and furtherance of gang interests.

On appeal, the State points to no specific contact indicating an action in furtherance of gang activity, citing to a single text message in which Alexander asks, "Where yall having Pete day[?]" The State points to no response in the record. Walker testified that "Pete Day" is a gang holiday celebrating the founder of the Sex, Money, Murder gang, but the State cites to no evidence connecting the "Pete day" question with crimes committed in furtherance of gang activity, nor is there any evidence that the text message discussion regarding a transfer of Percocet pills from Alexander to Waller furthered gang activity, particularly given Walker's testimony that this particular discussion indicated the Percocets were for "personal use." Although the State also argues, without citation to the record, that selling Percocet pills brings money into the gang and helps establish the gang's footing or reputation, arguments in briefs are not evidence. See *DirecTV v. White*, 355 Ga. App. 404, 407 (1), n. 3 (844 SE2d 289) (2020).

"[I]t is essential that the State demonstrate that the commission of the predicate act was intended to further the interests of the gang." (Citation and punctuation omitted.) *In the Interest of W. B.,* 342 Ga. App. 277, 282 (801 SE2d 595) (2017) (finding the requirement may be satisfied if the gang received proceeds or benefitted from a particular crime). As *In the Interest of W. B.* outlines, this can be done in a number of ways. See id., citing, inter alia, *In the Interest of L. P.*, 324 Ga. App. 78, 84 (3) (749 SE2d 389) (2013) (concluding evidence showing crime committed in retaliation for act or insult against gang or gang member sufficient to show crime furthered gang's interest); *Alston v. State*, 329 Ga. App. 44, 47 (1) (763 SE2d 504) (2014) (holding evidence crime committed in a high-profile manner to allow witnesses and victims to learn that a particular gang committed the crime and to enhance its reputation shows benefit to gang); *Morris v. State*, 340 Ga. App. 295, 300 (1) (797 SE2d 207) (2017) (finding gang references to incident on social media, establishing gang responsibility for purposes of intimidation or enhancement of reputation satisfies nexus requirement). Here, the State presented no evidence — much less any preponderance of evidence — to show that Alexander acted in furtherance of gang activity. As a result, we reverse the trial court's finding on this point.

13

3. Alexander contends that the State failed to prove that a substance found in a grocery bag was methamphetamine and, as a result, failed to establish by a preponderance of the evidence that he committed the offense of trafficking in methamphetamine. We find no error.

OCGA § 16-13-31 (e) provides that "any person who . . . has possession of 28 grams or more of methamphetamine . . . or any mixture containing . . . methamphetamine . . ., as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine . . . [.]" OCGA § 16-13-26 (3) (B) lists methamphetamine as a Schedule II controlled substance.

The record shows that when law enforcement officers searched Alexander's bedroom pursuant to a Fourth Amendment waiver, they found a grocery bag with a clear Ziploc bag inside. The Ziploc bag contained a "clear, crystal ice like substance." The bag also contained numerous pill bottles, including a pill bottle with Alexander's name on it.

Walker, one of the officers who conducted the search, testified that based upon her experience and training as a law enforcement officer, the ice-like substance appeared to be methamphetamine. Alexander's probation officer, Aaron Cobb, who

14

also participated in the search, testified that based upon his training and experience, the substance appeared to be methamphetamine. His training included attending a 40-hour drug identification class in which he learned what methamphetamine looked like and how to make it. The officers also found digital scales, which, as Cobb testified based upon his training and experience, were commonly used to weigh illegal drugs. Michael Davis, a drug investigator with the Hart County Sheriff's Office, also responded to the scene. He had participated in approximately 100 illegal narcotics investigations and had received on-the-job training since 2010, in addition to taking undercover drug classes. He testified that he knew what methamphetamine looked like, describing it as a "crystal, rock-like substance, white in color usually[,]" and that based on his training, knowledge, and experience over 13 years, the substance in the Ziploc bag appeared to be methamphetamine.

Using the type of test kit Davis had been trained to use and had used approximately 200 times before, he field-tested the substance, which was positive for methamphetamine. He also weighed the substance, both on the scales found at Alexander's residence and later on scales at the sheriff's office. The field-tested

methamphetamine weighed approximately 37 grams on both scales. Davis testified that the trafficking amount is 28 grams.[5]

On appeal, Alexander asserts that the State failed to show by a preponderance of the evidence that the substance was methamphetamine. He argues that field testing is insufficient, that Walker's testimony about her drug training was insufficiently detailed, and he points to testimony in which Cobb and Davis acknowledged on cross examination that the field test's manufacturer says the tests are merely presumptive. Davis, however, also testified that in his personal experience using the tests approximately 200 times, the tests were always accurate.

As this Court has held, "[a] chemical field test alone is sufficient to support a conviction for selling or possessing cocaine." (Citation and punctuation omitted.) *Pate v. State*, 318 Ga. App. 526, 527 (1) (734 SE2d 255) (2012); accord *Collins v. State*, 278 Ga. App. 103, 104 (1) (a) (628 SE2d 148) (2006) ("Positive field test results are alone sufficient to sustain a conviction for selling or possessing cocaine. Positive test results from the State crime lab are not required.") (citation omitted). It stands to reason that a chemical field test alone is likewise sufficient to show that the substance at issue was

---

[5] See OCGA § 16-13-31 (e) (identifying trafficking amount of methamphetamine as 28 grams).

methamphetamine. This is particularly true in light of our cases holding that field tests are sufficient to sustain convictions, see *Pate*, 318 Ga. App. at 527 (1), *Collins*, 278 Ga. App. at 104 (1) (a), because, as outlined above, the standard of proof in a probation revocation is lower than that required for conviction. *Dugger*, 260 Ga. App. at 846 (2).

Pretermitting whether Walker's testimony about her drug training was sufficiently detailed, Alexander does not challenge the testimony of Davis or Cobb about their training, which was thorough and detailed. In any event, this Court has found that even without a field test, officer identification of a drug can be sufficient to show a probation violation by a preponderance of the evidence where other circumstantial evidence is present. See *Thurmond v. State*, 304 Ga. App. 587, 588, 590 (1) (b) (696 SE2d 516) (2010). Here, the trial court had direct evidence, in the form of the field test results, in addition to the testimony of Davis and Cobb. In addition, Alexander does not challenge the trial court's determination that he possessed drug-related objects in the form of the scales found in his home. See *Lee v. State*, 347 Ga. App. 508, 513 (3) (820 SE2d 147) (2018) (noting that scales typically used to weigh methamphetamine for packaging, located in defendant's home and vehicle, were sufficient evidence to authorize a verdict for possession of drug-related objects).

The State showed by a preponderance of the evidence that Alexander violated the conditions of his probation by trafficking methamphetamine and possessing drug-related objects. The trial court did not err in revoking Alexander's probation based on these offenses.

4. Alexander argues that the State failed to prove that any of the substances involved were Schedule II controlled substances. The trial court's written orders provided that Alexander "did commit conspiracy to commit possession of a [S]chedule II controlled substance with intent to distribute[,]" but the written orders did not identify the substance or substances to which they referred.

(a) Alexander contends that although the substance in the grocery bag "looked like" methamphetamine, the State failed to prove that it was a Schedule II controlled substance.[6] As discussed in Division 3, the State showed by a preponderance of the

---

[6] At the hearing, the trial court made the oral pronouncement that it was finding by a preponderance of the evidence that Alexander had conspired to possess Percocet, a Schedule II controlled substance. This is of no moment, however, because, as noted above, the court's written order did not identify a particular substance upon which this finding was based. "An oral pronouncement of this type is not binding." *Williams v. Williams*, 295 Ga. 113, 114 (1) (757 SE2d 859) (2014). "[U]ntil an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment." *Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 772 (4) (b) (815

evidence that the substance was methamphetamine. OCGA § 16-13-26 (3) (b) provides, inter alia, that with certain exceptions inapplicable here, Schedule II substances include "any material, compound, mixture, or preparation which contains any quantity of . . . methamphetamine[.]" We find no error.

(b) Alexander additionally argues that the State cannot rely on a trade name — in this case, Percocet — to establish the identity of a suspected substance and that as a result, it failed to establish by a preponderance of the evidence that the Percocet pills were a Schedule II substance. We agree.

At the hearing, the State presented evidence that Walker found multiple bottles of prescription pills, which she referred to as Percocet or Naproxin, scattered around Alexander's room and in the bag with the methamphetamine. Some pill bottles had Alexander's name on them and others had his mother's name on them. As noted above, the State also presented evidence in the form of text messages that Alexander was obtaining Percocet pills for Waller. The State, however, presented no evidence

---

SE2d 70) (2018).

or testimony linking Percocet, which is not listed as a Schedule II substance in OCGA § 16-13-26, to any Schedule II substance.[7]

Our case law requires testimony or evidence linking the trade name of a medication not listed in the drug schedules in our Code with the substances that are listed in those schedules. See *Roundtree v. State*, 358 Ga. App. 140, 143-144 (1) (b) (854 SE2d 340) (2021) (reversing conviction for possession of a controlled substance where the substance was not listed on any controlled substance schedule and the State presented no testimony or evidence that the substance was chemically related to any controlled substance); *DeLong v. State*, 310 Ga. App. 518, 521 (2) (714 SE2d 98) (2011) (finding that the State failed to prove a violation of the Georgia Controlled Substances Act where it presented evidence that defendant distributed Ambien, but presented no testimony or physical evidence showing that Ambien, which was not listed on the relevant drug schedule, is the trade name for Zolpidem, which was listed on the

---

[7] The U. S. Department of Justice Drug Enforcement Administration has identified Percocet as a trade name for a formulation of acetaminophen and oxycodone, the latter of which is a Schedule II controlled substance pursuant to OCGA § 16-13-26 (1) (A) (xiv). See generally deadiversion.usdoj.gov/drug_chem_info/oxycodone.pdf, accessed March 14, 2024. "[T]he trade name of a statutorily designated controlled substance[, however,] is not the proper subject of judicial notice[.]" *DeLong v. State*, 310 Ga. App. 518, 522 (2) (714 SE2d 98) (2011).

schedule). Accordingly, the trial court erred in revoking Alexander's probation based on this offense.

(c) As noted above, the trial court revoked Alexander's probation, in part, by finding that he had engaged in a conspiracy to possess a Schedule II controlled substance with intent to distribute. Although we have found Alexander possessed methamphetamine, a Schedule II controlled substance, the State points us to no evidence that he conspired or even communicated with anyone either to possess the methamphetamine or to distribute it. See OCGA § 16-4-8 ("A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy."). While the text messages between Alexander and Waller could possibly indicate a conspiracy to possess and distribute Percocet, as outlined above, the State failed to show that Percocet is itself or is chemically related to a Schedule II substance. As a result, we find that the trial court abused its discretion, and we reverse on this count.

(d) The trial court also revoked Alexander's probation, in part, based on its finding that he had illegally used a communications facility. Alexander notes this fact

and makes the single conclusory statement that, "[w]ithout these improperly admitted line[ ]sheets, the State could not have proven by a preponderance that Mr. Alexander committed the alleged . . . unlawful use of communications violations." He presents no specific argument, points to no case law on the illegal use of a communications facility, and does not even cite to the relevant Code section, OCGA § 16-13-32.2. Again, mere conclusory statements are not the type of meaningful argument contemplated by our rules. *Bowman*, 358 Ga. App. at 615 (2). To the extent that Alexander has attempted to raise any contentions of error regarding the trial court's finding in this regard, they have been abandoned.

5. To summarize, for the foregoing reasons, we find that the trial court erred in finding that Alexander committed the new offenses of violating the Street Gang Terrorism and Prevention Act and engaging in a conspiracy to commit possession of a Schedule II controlled substance with intent to distribute. However, we find that the trial court correctly based its revocation decision on its determination that he committed the new offenses of trafficking methamphetamine and possessing drug-related objects, as well as on its unchallenged determination he committed the new offense of illegally using a communications facility.

Accordingly, "[b]ecause the revocation of probation is a matter within the discretion of the trial court, we vacate the trial court's order and remand this case to the trial court in order that it may consider in its discretion what penalty to impose" based upon Alexander's remaining new offenses of trafficking in methamphetamine and possession of drug-related objects, and illegally using a communications facility. *Brown v. State*, 294 Ga. App. 1, 6 (3) (668 SE2d 490) (2008) (vacating and remanding probation revocation case with instruction for the trial court to consider what penalty to impose where the evidence supported only that the appellant committed one new crime and the trial court found that the evidence supported revoking the appellant's probation based on the commission of two new crimes).

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded with direction. Doyle, P. J., and Watkins, J., concur.*